Arthur G. Woodward (SBN: 142914)
Jake C. Weaver (SBN: 300962)
**Reynolds Tilbury Woodward LLP**
11601 Blocker Drive, Suite 105
Auburn, California 95603
Phone: (530) 885-8500
awoodward@rtwlawllp.com

Andrew M. Klein
**Klein Law Group PLLC**
(Pro hac vice application pending)
1250 Connecticut Ave NW, Suite 700
Washington, DC 20036
Phone: (202) 289-6955
aklein@kleinlawpllc.com

Attorneys for the Plaintiff,
COLFAXNET, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| ColfaxNet, LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>City of Colfax,<br><br>           Defendant. | Case No. 2:19-cv-02167-WBS-CKD<br><br>**PLAINTIFF COLFAXNET, LLC MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT; REQUEST FOR EXPEDITED REVIEW UNDER 47 U.S.C. § 332(c)(7)(B)(v)**<br><br>Date:        September 8, 2020<br>Time:        1:30 p.m.<br>Courtroom:  5<br>                14th Floor<br>Judge:      Hon. William B. Shubb |

# TABLE OF CONTENTS

**I. INTRODUCTION** ................................................................................................ 1

**II. STATEMENT OF FACTS** ................................................................................. 5

**III. LEGAL STANDARD FOR SUMMARY JUDGMENT** ................................ 11

**IV. ARGUMENT** ...................................................................................................... 13

   1)   The City's Denial of the Request Was Not in Writing, In Violation Of Federal Law ............. 13

   2)   The City Failed To Act On The ColfaxNet Request Within A Reasonable Period Of Time, in Violation of 47 U.S.C. § 332(c)(7)(B)(ii) ................................................................. 17

   3)   The City Failed to Approve the ColfaxNet Eligible Facilities Request in Violation of 47 U.S.C. §1455 and 47 C.F.R. §1.6100 ................................................................. 21

   4)   The City's Regulation of the ColfaxNet Wireless Service Facilities Improperly Considered Radio Frequency Emissions in Violation of 47 U.S.C. §332(c)(7)(B)(iv) ............................... 25

**V. REMEDY** ............................................................................................................. 28

**VI. CONCLUSION** .................................................................................................. 30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Airtouch Cellular v. City of El Cajon*, 83 F.Supp.2d 1158 (S.D. Cal. 2000)...................................... 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................... 11

*AT & T Mobility Services, LLC v. Village of Corrales*, 642 Fed.Appx. 886 (10th Cir. 2016) ........... 13

*AT&T Wireless Services of California LLC v. City of Carlsbad*, 308 F.Supp.2d 1148 (S.D. Cal.

2003)...................................................................................................................................... 12, 29

*Bax v. Doctors Medical Center of Modesto, Inc.*, 393 F.Supp.3d 1000 (E.D. Cal. 2019)............ 11, 12

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ................................................... 15

*Cal. RSA No. 4 (dba Verizon Wireless) v. Madera Cnty.*, 332 F.Supp.2d 1291 ................................. 29

*Cellular Phone Taskforce v. FCC*, 205 F.3d 82 (2d Cir. 2000)......................................................... 27

*Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490 (2d Cir. 1999) ............................. 12, 26

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................. 11

*City of Arlington v. Federal Communications Commission*, 569 U.S. 290 (2013) ......................... 3, 18

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) ................................................. 3, 24, 26

*Crown Castle NG E. Inc. v. Town of Greenburgh,* No. 12-CV-6157, 2013 WL 3357169 (S.D.N.Y.

2013)...................................................................................................................................... 24, 29

*D.R. Horton, Inc.—Sacramento v. National Union Fire Insurance Company of Pittsburgh, PA*, 2015

WL 13655204, No. 14-cv-2155-KJM-DAD (E.D. Cal. 9/01/2015)................................................ 11

*Evans v. Bd. of Cty. Comm'rs*, 752 F.Supp. 973 (D. Colo. 1990) ................................................ 11, 12

*Extenet Systems, Inc. v. Village of Pelham*, 377 F.Supp.3d 217 (SDNY 2019) ..................... 23, 24, 29

*Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311 (2d Cir. 2000)............................................ 26

*Gillette v. Delmore*, 886 F.2d 1194 (9th Cir. 1988).......................................................................... 11

*In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994 (November 18, 2009)........................ 3, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)......................................... 12

*Metro PCS, Inc. v City and County of San Francisco*, 400 F.3d 715 (9th Cir. 2005) ........................ 16

*Montgomery County, Md. v. FCC*, 811 F.3d 121 (2015)................................................. 4, 21, 23, 24, 28

*National Tower, LLC v. Plainville Zoning Board of Appeals*, 297 F.3d 14 (1st Cir. 2002)......... 12, 27

*New Cingular Wireless PCS, LLC v. Town of Fenton*, 843 F.Supp.2d 236 (N.D.N.Y. 2012) ........... 15

*New Par d/b/a Verizon Wireless v. City of Saginaw*, 301 F.3d 390 (6th Cir. 2002) .................... 16, 26

*Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 20 F.Supp.2d 875 (E.D. Pa. 1998).... 29

*Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 181 F. 3d 403 (3d Cir. 1999) ............ 26

*Orange Cty.-Cty. Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 632 F. App'x 1 (2d Cir. 2015) ...................................................................................................................... 25, 29

*Orange Cty.-Cty. Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 84 F.Supp.3d 274 (S.D.N.Y.) ...................................................................................................................... 25, 29

*Preferred Sites, LLC v. Troup County*, 296 F.3d 1210 (11th Cir. 2002) ........................................... 15

*SPRINTCOM, Inc. v. Puerto Rico Regulations and Permits Admin., et al.*, 553 F.Supp.2d 87 (D. Puerto Rico 2008)........................................................................................................................ 27

*Telespectrum, Inc. v. Public Service Commission of Kentucky*, 227 F. 3d 414 (6th Cir. 2000) ......... 25

*T–Mobile Northeast LLC v. City Council of Newport News*, 674 F.3d 380 (4th Cir. 2012) ............. 26

*T-Mobile Northeast LLC v. Loudoun County Bd. of Sup'rs*, 748 F.3d 185 (4th Cir. 2014)............... 26

*T-Mobile Northeast LLC v. Town of Ramapo*, 701 F.Supp.2d 446 (S.D.N.Y. 2009).................. 26, 27

*T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 135 S. Ct. 808 (2015) ......................... passim

*T-Mobile USA Inc. v. City of Anacortes*, 572 F.3d 987 (9th Cir. 2009) ............................................ 29

*VWI Towers, LLC v. Town of North Andover Planning Board*, 404 F.Supp.3d 456 (D. Mass 2019).. ...................................................................................................................................................... 13

*Zuehlsdorf v. Simi Valley Unified Sch. Dist.* (2007) 148 Cal.App.4th 249 ...................................... 30

**Statutes**

47 C.F.R. § 1.6100(a) ......................................................................................................... 18

47 C.F.R. § 1.6100(b)(7) ..................................................................................................... 22

47 C.F.R. § 1.6003(a) ......................................................................................................... 21

47 C.F.R. § 1.6003(c)(1)(iv) .......................................................................................... 17, 18

47 U.S.C. § 1455 ........................................................................................................... 23, 25

47 U.S.C. § 1455(a) ............................................................................................................ 21

47 U.S.C. § 1455(a)(2) ........................................................................................................ 21

47 U.S.C. § 1455(c)(5) ........................................................................................................ 23

47 U.S.C. § 332(c)(7)(B)(v) ...................................................................................... 2, 28, 29

47 U.S.C. § 151 ..................................................................................................................... 2

47 U.S.C. § 332 .................................................................................................................. 14

47 U.S.C. § 332(c)(7)(B)(iv) ............................................................................................... 28

City of Colfax Municipal Code § 17.40.070 (G)(4) ..................................................... 26, 27

**Regulations**

47 C.F.R. § 1.6100(b)(1) ..................................................................................................... 21

47 C.F.R. § 1.6100(b)(1)(iii) ............................................................................................... 21

47 C.F.R. § 1.6100(c)(2) ..................................................................................................... 22

47 C.F.R. § 1.6100(c)(4) ................................................................................................... 3, 22

47 CFR § 1.6002(a) ............................................................................................................. 20

47 CFR 1.6003(a) ................................................................................................................ 19

**Administrative Orders**

*In re Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies,* 29

FCC Rcd. 12865 (Oct. 17, 2014), *amended by* 30 FCC Rcd. 31 (Jan. 5, 2015) ................... 3, 22, 24

*In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994 (Nov. 18, 2009) ........................... 3, 18, 20

**Rules**

Fed. R. Civ. Proc. 56(a) ................................................................................................. 11

Fed. R. Civ. Proc. 56(a)-(d) ......................................................................................... 11

PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# I. INTRODUCTION

ColfaxNet LLC ("ColfaxNet") submitted a request to the City of Colfax (the "City" or "Defendant") on November 15, 2018 to modify an existing wireless communications facility (the "Request"). The City was required by federal law to approve the Request within 60 days. The City was also required by a different provision of federal law to act within 150 days. The City failed in both respects, continually delaying action on the Request and ultimately – nearly a year later – voting to deny the ColfaxNet Request. At that point, the City violated a third provision of federal law, by failing to issue a written denial at the time of its decision.

Federal law places extremely specific requirements and limitations on municipalities in their consideration of wireless service facility requests. In this instance, Defendant violated several of those federal laws. There is a record of the proceedings before the City; that record demonstrates that:

    a.  Defendant failed to act on the Request within a reasonable period of time (150 days);

    b.  Defendant failed to issue its denial of the Request in writing, contemporaneously with the vote denying the Request;

    c.  Defendant's denial of the Request was not based on substantial evidence;

    d.  Defendant failed to approve the Request – which is an "eligible facilities request" under federal law – within 60 days;

    e.  Defendant improperly considered the environmental effects of radio frequency emissions despite being prohibited by federal law from doing so, and

    f.  Defendant's conduct prohibited the provision of wireless services.

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Each of these six violations of federal law are independent and separate claims, and each is duly raised in the Complaint.  A grant of relief requires only that the City be found to have violated any one of these six federal law provisions.

ColfaxNet moves for summary judgment on just four of these violations of federal law as these four are most easily resolvable on the Administrative Record and do not lend themselves to the type of obfuscation the City is anticipated to attempt.

The ColfaxNet Request constituted (1) a "request for authorization to place, construct or modify personal wireless service facilities," within the meaning of 47 U.S.C. § 332(c)(7)(B), and (2) an "eligible facilities request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station," pursuant to 47 U.S.C. § 1455(a)(1).  ColfaxNet is respectfully entitled to injunctive relief on an expedited basis pursuant to 47 U.S.C. §§ 332(c)(7)(B)(v) and 1455(a)(1).

As a matter of public policy, reflected in federal law and regulation, facilitating the deployment of wireless facilities is a national priority.  Modern wireless communications depend on networks of antennas, towers, and supporting equipment.  Central to the national objective is the modernization of existing wireless facilities, which must be done routinely as technology advances, equipment and facilities deteriorate, and additional radiofrequency spectrum is put into use.

The Telecommunications Act of 1996 (the "TCA"), which amended the federal Communications Act of 1934 (47 U.S.C. §151, *et seq.*; the "Act"), promoted reliable and widely-available wireless service and the rapid deployment of new technology.  This was achieved, in part, by reducing the obstacles raised by municipalities to the installation of wireless communications facilities.  In the TCA, Congress "impose[d] specific limitations on the traditional authority of state

and local governments to regulate the location, construction, and modification of such facilities." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005).

The federal statute specifically requires municipalities to act "within a reasonable period of time" after a request is filed. 47 U.S.C. § 332(c)(7)(B)(ii). The Federal Communications Commission (the "FCC," which is charged with implementing the Act) in 2009 established this "reasonable period of time" to be 150 days for Requests such as the one submitted by ColfaxNet. *In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, 14005 (Nov. 18, 2009) (the "FCC Shot Clock Order"), codified at 47 C.F.R. §1.6003(c)(iv).

The United States Supreme Court upheld both the FCC's statutory authority to interpret the "reasonable period of time" provision and the reasonableness of the presumptive 150-day deadline in *City of Arlington v. Federal Communications Commission*, 569 U.S. 290, 133 S.Ct. 1863 (2013) ("*City of Arlington*").

Recognizing that municipalities like Defendant were still unreasonably delaying wireless facility improvements, Congress enacted Section 6409 of the Middle Class Tax Relief and Job Creation Act in 2012 (codified at 47 U.S.C. §1455). This statute specifically states that municipalities "may not deny, and shall approve" a wireless "eligible facilities request." The ColfaxNet Request is an eligible facilities request.

The FCC in 2014 further defined this federal requirement and established a specific time limitation – 60 days – within which the municipality "shall approve" an eligible facility request such as the Request of ColfaxNet here. *In re Acceleration of Broadband Deployment by Improving Wireless Facilities Siting Policies,* 29 FCC Rcd. 12865 (Oct. 17, 2014), *amended by* 30 FCC Rcd. 31 (Jan. 5, 2015) ("Wireless Facility Order"). Should the municipality fail to approve the request within 60 days, the request "shall be deemed granted." 47 C.F.R. § 1.6100(c)(4).

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

These FCC Rules were upheld by the United States Court of Appeals for the Fourth Circuit, in *Montgomery County, Md. v. FCC,* 811 F.3d 121 (2015). "Functionally, what has occurred here is that the FCC – pursuant to properly delegated Congressional authority – has preempted state regulation of wireless towers. That is entirely permissible under our system of federalism." *Id.* at 129.

Defendant municipality plainly violated these federal laws and regulations in numerous respects. First, Defendant failed to issue a written decision at the time Defendant denied the Request. The failure to issue a written decision of denial contemporaneously with a dispositive City Council vote has been determined to be a strict violation of federal law by the United States Supreme Court. *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 135 S. Ct. 808 (2015). The incontrovertible record facts establish that Defendant did not issue a decision for roughly two months – which was one month after this case was initiated. There being no factual dispute concerning the City's failure to issue a written decision contemporaneously with the City Council vote, ColfaxNet is indisputably entitled to summary judgment on this ground.

Second, Defendant failed to act on the ColfaxNet Request within a reasonable period of time (150 days). The incontrovertible record facts likewise easily establish that Defendant far exceeded the 150-day deadline to act on the ColfaxNet Request – which deadline was specifically upheld by the U.S. Supreme Court in *City of Arlington*.

Third, Defendant's failure to affirmatively approve the Request within 60 days, and its purported denial of the Request a year later – by those very acts – violate the federal statutory directive that the City "may not deny, and shall approve" the ColfaxNet Request given that the Request was an eligible facilities request. The ColfaxNet Request is thus "deemed granted" under federal law.

Fourth, Defendant did not establish substantial evidence upon which to base Defendant's denial.  Fifth, Defendant further violated federal law by improperly considering radio frequency emissions in its decision-making.

Each of the City's foregoing actions and omissions are *per se* unlawful under federal law. Considering the clarity of the statutory law and precedent, and the City's own administrative record, this case must be one of the most straightforward cases this Court will see.

The appropriate remedy where a municipality such as the City has violated the Act in these respects is twofold: to deem the Request granted, and to issue injunctive relief ordering the City to immediately grant ColfaxNet's Request and issue any such other ancillary approvals necessary for the construction of the ColfaxNet wireless facility.

The Court is respectfully requested to find that, given the lack of any genuine issue of material fact, Defendant's actions clearly violate the federal Communications Act and federal regulations, and that ColfaxNet is entitled to expeditious relief to enable construction of its wireless facility without further delay.

## II. STATEMENT OF FACTS

ColfaxNet is a small family-owned company that provides communications services, including personal wireless service and wireless broadband internet service, in the City of Colfax and its surrounding region, consistent with licenses granted to ColfaxNet by the FCC. (Administrative Record, "A.R."[1] at COC000001, COC000038-44, COC000227-230, COC000053-

---

[1] The Administrative Record refers to Bates-stamped documents produced by Defendant City of Colfax and Bates-stamped documents produced by ColfaxNet.  The City's production was represented to be the complete record of all documents and communications in the possession of the City relating to the ColfaxNet Request, according to correspondence from the City's counsel to ColfaxNet's counsel on April 13, 2020. ColfaxNet, however, discovered that Defendant's production was incomplete. As Defendant has not met its obligation to provide the complete administrative record, ColfaxNet has produced all relevant documents and communications in ColfaxNet's possession in an attempt to provide a complete administrative record. To that

69, COC000156-58 and COC000324; COC000232, COC000678, CN000181-199, CN000207-212, CFN0007-0025)  To provide wireless services, ColfaxNet must place, construct, modify,  maintain, and operate its network of towers, base stations, antennas, and associated electronic equipment. (A.R. COC000038-44, COC000227-242, CN000181-199, CN000207-212, CFN0007-0025)

ColfaxNet utilizes trees as structures/towers/base stations to which ColfaxNet attaches wireless equipment, to enable licensed and authorized wireless communications between user equipment and the ColfaxNet communications network. (A.R. COC000038-44, COC000169-174, COC000227-242, COC000247,  COC000278, CN000181-199, CN000207-212, CFN0007-0025) ColfaxNet maintains wireless service facilities on Colfax Hill/Beacon Hill, including on a small portion of an 8.5-acre parcel of land at Sierra Sky Court/Drive in the City of Colfax.  Colfax Hill/Beacon Hill serves as the hub of ColfaxNet's hub-and-spoke wireless system, and ColfaxNet has been transmitting from this location for over 15 years. (A.R. COC000038-44, COC000227-242, CN000181-199, CN000207-212, CFN0007-0025)  A ColfaxNet primary tree tower/base station on Colfax Hill/Beacon Hill is and has been dead and at risk of falling.

Given the criticality of this location and equipment, it was determined by ColfaxNet that a single metal tower should replace the tree tower, on which the wireless service facilities could be safely  and  reliably  installed.  (A.R.  COC000038-44,  COC000169-174,  COC000227-242, COC000247, COC000278,    CN000181-199, CN000207-212, CFN0007-0025) The existing ColfaxNet wireless tree tower/base station is a structure at a fixed location that enables licensed or authorized wireless communications between user equipment and a communications network. (A.R. COC000001-2, COC000013-17, COC000205-206, COC000227-242, COC000247, COC000278,

---

end, ColfaxNet also submitted a Public Records Act request to the City on March 13, 2020; although the City initially indicated all disclosable public records would be provided by April 24, 2020, the City has not produced those records.

PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CN000181-199, CN000207-212, CFN0007-0025)

ColfaxNet initiated preliminary discussions with the City's Planning Director as early as February, 2017, and on or about February 20, 2017, the Planning Director informed ColfaxNet that a 60-foot metal tower could be approved administratively as an Administrative Permit. (A.R. CFN0001-2)  On February 21, 2017, City Planning Director Feagans informed ColfaxNet that a Conditional Use Permit was required, and some materials were submitted. (A.R. CFN0001-2)  On July 20, 2017, Mr. Corey Juchau of ColfaxNet met with City Planning Director Feagans at City Hall, confirming to the City that the ColfaxNet Request was in fact a replacement tower for the tree-tower, not a new tower.  Further correspondence between the City and ColfaxNet ensued August 24, 2017, on which date the City Planning Director emailed ColfaxNet indicating that ColfaxNet's Request would be considered a Conditional Use Permit application – and "will probably take at least 5-6 weeks to process given the public hearing requirements and Council meeting dates." (A.R. COC000050, CFN0093-105)

On November 15, 2018, ColfaxNet filed the Request with the City for authorization to place, construct, or modify wireless service facilities/structures, to replace the dead tree on which ColfaxNet wireless equipment was located with a metal tower. (A.R. *passim*, including COC000001-2, COC000163, COC000013-20, COC000485, COC000050, COC000053-69, COC000156-58 and COC000324;  COC000207-208, COC000227-242, COC000247, COC000278, CN000181-199, CN000207-212).  ColfaxNet also met that day with City Planning Director Feagans concerning the Request. (A.R. COC000053-69, COC000156-58 and COC000324; COC000227-242)

Defendant did not approve or deny the ColfaxNet Request until September 25, 2019. (A.R. COC000592-617, COC000731-741, CFN0092)  Defendant, by verbal vote of the Colfax City Council on September 25, 2019, denied the ColfaxNet Request. (A.R. COC000731-741, CFN0092)

Defendant's decision on that date was not in writing, such that Defendant did not provide written reasons at the same time Defendant communicated its decision to deny the ColfaxNet Request on September 25, 2019. (A.R. COC000731-741, CFN0092).

In total, 314 days elapsed between the ColfaxNet Request and the City Council verbal vote denying the Request. (A.R. COC000163, COC000485, COC000053-69, COC000156-58 and COC000324; COC000592-617, COC000731-741, CFN0092)  Defendant thus quite obviously did not grant the ColfaxNet Request or issue a written decision denying the Request within 60 days or 150 days of the Request. (A.R. COC000001-3, COC000004-5, COC000163, COC000485, COC000053-69, COC000156-58 and COC000324; COC000227-242, COC000592-617, COC000731-741, CFN0048-51, CFN0092, CN000181-199, CN000207-212)

ColfaxNet filed a Complaint with this Court on October 25, 2019, alleging Six Causes of Action against Defendant for violation of federal law. (Dkt. #1)  Defendant then issued a Findings and Order document dated November 19, 2019. (A.R. COC000004-5, CFN0048-51)  That Findings and Order document was issued 369 days after the ColfaxNet Request for authorization to place, construct, or modify wireless service facilities (A.R. COC000004-5, COC000163, COC000485, COC000053-69, COC000156-58 and COC000324; CFN0048-51)

Notably, the ColfaxNet Request to the City to approve a modification of the existing wireless structure stated that "the tower will be 60' in height, a few feet lower than the dead tree" to which ColfaxNet wireless equipment was attached. (A.R. COC000054, COC000204, COC000380)  The City of Colfax acknowledged that "the new tower would be no higher than the existing equipment, approximately 72 feet." (A.R. COC000001)  The wireless structure for which ColfaxNet submitted the Request thus did not involve any substantial change in dimensional height as compared to the existing structure. (A.R. COC000001-2, COC000053-69, COC000156-58 and COC000324;

COC00084-86, COC000204, COC000592-617, COC000731-741, CN000228)

Two months after the Request was filed, on or about January 15, 2019, City Planning Director Feagans advised ColfaxNet that the City unilaterally declared the Request to be a far more significant request for a Variance (Major) rather than a conditional use permit. (A.R. COC000163, COC000485, CFN0005-6) As a result, there was discussion at times of the City approving a maximum wireless tower height of eighty feet but with a current build to approximately sixty feet in order to avoid the possible need for another unreasonably drawn-out City review process in another few years.

Months later, on April 24, 2019, the City of Colfax held a City Council Meeting and Hearing during which the Request was discussed.  Mayor pro tem Mendoza presided over that City Council Meeting and Hearing relative to the ColfaxNet Request.   (A.R. COC000001-3, CFN0052-55, CFN0056, COC000004)  During that April 24, 2019 meeting and hearing, the City of Colfax entertained a discussion of the purported health hazards of radio frequency emissions relative to the placement, construction, and/or modification of the ColfaxNet wireless service facility. (A.R. COC000003-4, CFN0052-55 (Video recording of meeting and hearing), CFN0056, audio recording of April 24, 2019 meeting and hearing, at 1:32:00 through 1:41:02), CFN0057-91)  Mayor pro tem Mendoza distributed materials before, during and/or after the City Council Meeting and Hearing of April 24, 2019 concerning the purported health hazards of radio frequency emissions, relative to the placement, construction, and/or modification of the ColfaxNet wireless service facility. (A.R. CFN0052-55, CFN0056, CFN0057-91)

According to the Minutes of the City Council Meeting and Hearing April 24, 2019: "Mayor Pro Tem Mendoza, after hearing from many constituents, spent some time gathering information regarding communication towers and safety concerns." "She also feels Council needs more time and

information before making a decision that will balance, [sic] health, fire safety and the services provided." (A.R. COC000003)  Mayor pro tem Mendoza and other Councilmembers voted to deny the ColfaxNet request for authorization to place, construct or modify the ColfaxNet wireless service facility during the September 25, 2019 City Council meeting. (COC000731-741 CFN0048-51, CFN0092)  Defendant's subsequent Findings and Order document states that "applicant did not establish that the granting of the variance will not be detrimental to the public health, safety or welfare, or injurious to the property or improvements in such vicinity and land use district in which the property is located, and therefore did not meet the criteria required by the Colfax Municipal Code §17.40.070 G 4 [sic]." (A.R. COC000004-5 CFN0048-51)

The City Council voted on April 24, 2019 for a continuance for consideration of the Request. (A.R. COC000003)  The City requested further information from ColfaxNet on April 30, 2019. (A.R. COC000003, COC000111-112)  ColfaxNet supplied the requested information several days later, on May 4, 2019. (A.R. COC000033-37, CFN0033-35)

ColfaxNet was asked by neighboring landowners and City officials to consider and discuss alternative tower options, and in respect thereof consented to continue the matter between the City Council meetings of May 22, 2019 and August 14, 2019.

The City requested information from ColfaxNet on June 8, 2019 and September 10, 2019. (A.R. COC000085-86, CFN0036-40)  ColfaxNet supplied further information in response on or about June 19, 2019 and on September 13, 2019. (A.R. COC000084-86, COC000592-617, CFN0036-40)

Ultimately, the Administrative Record reveals the City did not act on the Request within 60 or 150 days, did not issue a contemporaneous written decision on its denial of the Request, and did not issue a written decision supported by substantial evidence contained in a written record.  In sum,

the City's denial of the Request was unsupported, untimely and unlawful.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(a)-(d); see also *D.R. Horton, Inc.—Sacramento v. National Union Fire Insurance Company of Pittsburgh, PA*, 2015 WL 13655204, No. 14-cv-2155-KJM-DAD at *2 (E.D. Cal. 9/01/2015). A party may move for summary judgment of an entire claim or defense, or merely to dispose of only a "part of [a] claim or defense."  Fed. R. Civ. Proc. 56(a); See *Gillette v. Delmore*, 886 F.2d 1194, 1197-99 (9th Cir. 1988).

As the moving party, ColfaxNet carries the initial burden of demonstrating to the court that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  Factual disputes that would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Id*. at 248. Furthermore, "the moving party's initial burden is slight," requiring only that the movant "allege an absence of evidence to support the opposing party's case and identify supporting portions of the record."  *Evans v. Bd. of Cty. Comm'rs*, 752 F. Supp. 973, 975 (D. Colo. 1990); see also *Bax v. Doctors Medical Center of Modesto, Inc.*, 393 F.Supp.3d 1000, 1007 (E.D. Cal. 2019).

Once the moving party has carried its initial burden, the burden shifts to the nonmoving party to present substantial material evidence that there is indeed a genuine issue for trial.  See *Celotex*, 477 U.S. at 323-24.  The nonmoving party must produce evidence to support its claim or defense by

more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Furthermore, mere "[c]onclusory allegations will not establish an issue of fact sufficient to defeat summary judgment." *Evans v. Bd. of Cty. Comm'rs*, 752 F. Supp. 973, 975 (D. Colo. 1990); *see also Bax v. Doctors Medical Center of Modesto, Inc.*, 393 F.Supp.3d 1000, 1008 (E.D. Cal. 2019).

As the only question being asked in ColfaxNet's claims is whether the City's administrative actions violated federal law in denying the ColfaxNet Request, the sole determining source of facts to be considered is the Administrative Record generated by the City throughout the City's consideration and eventual denial of ColfaxNet's Request. All evidence concerning the City's actions are contained within the Administrative Record and, with respect to the nature of the federal law claims made by ColfaxNet, facts outside of the Administrative Record may not be considered. For example, "a claim alleging a lack of substantial evidence for a zoning decision in violation of the Telecommunications Act of 1996 ("TCA") is especially amenable to decision at summary judgment since the court's only role is to determine if substantial evidence exists within the administrative record that would support the zoning decision." *AT&T Wireless Services of California LLC v. City of Carlsbad*, 308 F.Supp.2d 1148, 1155 (S.D. Cal. 2003).

Numerous federal court decisions have established that administrative review violations may not consider information outside of the administrative record. *See Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 495, 497 (2d Cir. 1999) (affirming grant of summary judgment where district court reviewed administrative record for substantial evidence under the TCA); *National Tower, LLC v. Plainville Zoning Board of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002) (under TCA substantial evidence claim, court merely reviews administrative record to determine if evidence exists to support a reasonable conclusion); *Airtouch Cellular v. City of El Cajon*, 83 F.Supp.2d 1158,

1164 (S.D. Cal. 2000) (granting summary judgment on substantial evidence claim under TCA based on review of administrative record); *VWI Towers, LLC v. Town of North Andover Planning Board*, 404 F.Supp.3d 456, 466 (D. Mass. 2019) ("The Court's review is confined to the record before the local board" for claims of violations of the in-writing and substantial evidence federal law requirements); *AT&T Mobility Services, LLC v. Village of Corrales*, 642 Fed.Appx. 886, 888 (10th Cir. 2016) (affirming district court's grant of summary judgment where evidence not contained in administrative record could not be considered towards substantial-evidence and administrative-review claims). This motion is based on facts undisputed between the parties, established in the City's administrative record or admitted in its Answer.

The adjudication of this claim does not depend on the resolution of any disputed material facts and summary judgment is appropriate at this time. ColfaxNet is entitled to summary judgment as a matter of law in that the City violated <u>several</u> federal laws by, *inter alia*, failing to approve an eligible facilities request within 60 days, failing to act on the Request within 150 days, and failing to issue a contemporaneous or substantive written denial of the ColfaxNet Request.

## IV. ARGUMENT

### 1) The City's Denial of the Request Was Not in Writing, In Violation Of Federal Law

Federal law requires that any municipal denial of a request to modify or construct a wireless facility "shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. §332(c)(7)(B)(iii). The City's own Administrative Record clearly and indisputably demonstrates the City's violation of this federal law. The federal statute also provides that an entity "adversely affected by any final action or failure to act…may commence an action in any court of competent jurisdiction," which court "shall hear and decide such action on an expedited basis." 47 U.S.C. §332(c)(7)(B)(v).

The City denied the ColfaxNet Request on September 25, 2019, and did not provide even a bare written denial – much less any statement of reasons – at that time.  In fact, the City did not issue a written denial the following month, even after the filing of the Complaint in this case against the City.  The City did finally issue a spurious written denial (the Findings and Order document dated November 19, 2019) roughly two months after the City denied the Request and one month after this case was initiated. (A.R. COC000004-5, CFN0048-51)  The law and the facts are clear, establishing Defendant's violation of 47 U.S.C. §332.

The United States Supreme Court has determined that a municipality's failure to issue a written decision of denial contemporaneous with the denial of a request equates to a strict violation of federal law.  *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 135 S. Ct. 808, 817 (2015). There being no factual dispute concerning the City's failure to issue a written decision contemporaneous with the City Council vote, ColfaxNet is plainly entitled to relief on this ground as well.

In its *City of Roswell* decision, the Supreme Court explained the direct correlation between the statute's "in writing" provision and the separate requirement that municipalities act on applications "within a reasonable period of time."  The Supreme Court held that in order to comply with the statute's "in writing" requirement, a local government must provide "written reasons at essentially the same time as it communicates its denial" of a request.  *City of Roswell*, 135 S. Ct. at 816.  The Supreme Court found that where the City of Roswell waited 26 days to issue its detailed reasons, the city "did not comply with its statutory obligations." *Id.* at 819.  As a result of Defendant's unlawful failure here, which lasted nearly two months, ColfaxNet suffered the exact prejudice deemed unacceptable by the Supreme Court: it was unaware of what the City's reasons for

denial would be and was left without information concerning administrative remedies or other recourse. *City of Roswell* at 816.

When the City did finally issue the Findings and Order document, it did so not only well past the federal Shot Clock deadline (369 days and counting from ColfaxNet's Request) but also well after this lawsuit was filed. Even if such a *post hoc* denial by the City *could* arguably be considered, the delay in issuing it (until after suit was filed) was unreasonable as a matter of law. The City's *post hoc* denial should thus be regarded as a complete nullity.

The U.S. Supreme Court has in fact rejected such *post hoc* rationalizations, which would permit a municipality to "wait until a lawsuit is commenced and a court orders it to state its reasons." *City of Roswell*, 135 S.Ct. at 816 n. 3. Applicants such as ColfaxNet "would thus be left to guess at what the locality's written reasons will be, write a complaint that contains those hypotheses, and risk being sandbagged by the written reasons that the locality subsequently provides in litigation after the challenging entity has shown its cards." *Id. See also, Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

Other federal Circuit and District courts have likewise repeatedly rejected such after-the-fact efforts to justify a denial. *See, e.g., Preferred Sites, LLC v. Troup County*, 296 F.3d 1210, 1220 n. 9 (11th Cir. 2002) ("These reasons, however, were not espoused prior to the commencement of this action. Appellant may not rely on rationalizations constructed after the fact to support the denial of Appellee's application."); *New Cingular Wireless PCS, LLC v. Town of Fenton*, 843 F. Supp. 2d 236, 247 (N.D.N.Y. 2012) (new post-litigation rationale for denial "appears to be a post hoc rationalization that cannot now be raised to defend the ZBA's action"). Defendant's post-litigation Findings and Order document is, simply put, untimely and ineffectual.

In addition to being completely untimely and disregarded on that basis, the City's Findings and Order document is substantively deficient. "For a decision…denying a request to place, construct, or modify personal wireless service facilities to be 'in writing' for the purposes of [the Act], it must (1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow reviewing court to evaluate the evidence in the record that supports those reasons." *New Par d/b/a Verizon Wireless v. City of Saginaw*, 301 F.3d 390, 395-96 (6th Cir. 2002). The City's document plainly fails the sufficiency test, simply setting forth conclusory statements on invalid considerations that are preempted by federal law. *See Southwestern Bell Mobile Systems, Inc. v. Todd*, 244 F.3d 51, 60 (1st Cir. 2001) ("permitting local boards to issue written denials that give no reasons for a decision would frustrate meaningful judicial review, even where the written record may offer some guidance as to the board's rationale."); *Metro PCS, Inc. v City and County of San Francisco*, 400 F.3d 715, 721-22 (9th Cir. 2005) (adopting standard articulated in *Southwestern Bell*). This failure is particularly remarkable considering that, by the time the City issued its Findings and Order, ColfaxNet had already filed the Complaint in this action, citing relevant federal law standards. At every step of the way, Defendant seems to have exhibited a calculated disregard of federal law.[2]

Moreover, where no written denial with supporting reasoning is issued, the Supreme Court has determined that the denial is *ipso facto* not based upon substantial evidence as required by 47 U.S.C. §332(c)(7)(B)(iii). *City of Roswell*, 135 S. Ct. at 814. In fact, a key purpose of requiring a written denial is to facilitate judicial review: "in order to determine whether a locality's denial was supported by substantial evidence, as Congress directed, courts must be able to identify the reason or

---

[2] In this regard it is also quite remarkable that the City failed to meet even its own self-imposed municipal requirement to issue a written Notice of Action within five working days. City of Colfax Municipal Code, S. 17.36.110 (Ord. No. 519, 8-8-2012).

reasons why the locality denied the application." *City of Roswell*, 135 S. Ct. at 814; *see also Tennessee ex rel. Wireless Income Properties, LLC v. City of Chattanooga*, 403 F.3d 392 (6th Cir. 2005) ("Given that the City failed to provide written documentation in support of its decision, we must conclude that the City's decision was not supported by substantial evidence, in violation of the TCA.") and *National Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 22 (1st Cir. 2002) ("we will not uphold a board's denial of a permit on grounds that it did not present in its written decision").

Defendant thus failed entirely to provide the written denial so clearly required by federal law and Supreme Court precedent. The City's plainly unlawful actions and any attempted reliance on an untimely and inadequate *post hoc* denial may not be condoned, for any purpose. Any such arguments by the City would be directly contrary to the plain language of the statute, *City of Roswell* and other significant precedent.

In sum, Defendant failed to issue a contemporaneous written denial and the *post hoc* denial is a complete nullity. Given Defendant's inarguable failure to issue a lawful written decision as required by federal law, a grant of summary judgment to ColfaxNet on the second cause of action is entirely appropriate and respectfully requested.

**2) The City Failed To Act On The ColfaxNet Request Within A Reasonable Period Of Time, in Violation of 47 U.S.C. § 332(c)(7)(B)(ii)**

Federal law dictates unequivocally that a municipality must "act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period of time* after the request is duly filed . . . ." 47 U.S.C. § 332(c)(7)(B)(ii) (emphasis added). That reasonable period of time has been established by the FCC to be <u>150 days</u> for the type of facility here at issue. 47 C.F.R. §1.6003(c)(1)(iv).

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Where a municipality fails to act on a request on or before that deadline, the City "is presumed to not have acted within a reasonable period of time." 47 C.F.R. § 1.6003(a).  Defendant failed to act within 150 days.  Given that the definitive deadline to act on a request is established by federal law, the sole determinant in assessing such a claim is the City's Administrative Record.

The "reasonable period of time" standard is critical to ensure municipalities act promptly on requests to install wireless facilities.  Given the uncertainty that existed after the TCA's adoption as to what constituted a "reasonable period of time" for final action on a request, the FCC in 2009 resolved this uncertainty in a ruling known as the "Shot Clock Order."  See *In re Petition for Declaratory Ruling*, 24 FCC Rcd. 13994, 14001 (November 18, 2009).  The FCC found that "unreasonable delays in the personal wireless service facility siting process have obstructed the provision of wireless services," and that such delays "impede the promotion of advanced services and competition that Congress deemed critical in the Telecommunications Act of 1996."  *Id.* at 14006, 14008.

The FCC Shot Clock Order established a rebuttable presumption that a "reasonable period of time" under 47 U.S.C. Section 332(c)(7)(B)(ii) is 90 days to process a collocation request (*i.e.,* to place antennas on an existing tower or other structure) and 150 days to process all other requests.  *Shot Clock Order*, 24 FCC Rcd. at 13994, 14005, ¶¶ 32, 45.  The federal Rule is codified at 47 C.F.R. §1.6003(c)(1)(iv).  The FCC stated that it "expect[s] that this certainty will enable personal wireless service providers more vigorously [*sic*] to enforce the statutory mandate against unreasonable delay that impedes the deployment of services that benefit the public." *Shot Clock Order*, ¶ 37

Notably, U.S. Supreme Court in *City of Arlington v. FCC* upheld both the FCC's statutory authority to interpret the "reasonable period of time" provision and the reasonableness of the

presumptive 90-day and 150-day deadlines.

Despite the fact Defendant's review of the ColfaxNet Request was subject to the 150-day deadline established by the FCC and upheld by the U.S. Supreme Court, Defendant did not come close to meeting that fundamental obligation.   ColfaxNet is therefore respectfully entitled to injunctive relief ordering the City to grant approval for the wireless facility modification.

Rather than a matter of days or months, the City here dragged its review and consideration process out for a year.   The City in fact subjected ColfaxNet to an insufferable process that far exceeded the mandatory 150-day timeframe and egregiously violated ColfaxNet's rights under federal law.   "A siting authority that fails to act on a siting application on or before the shot clock date for the application… is presumed not to have acted within a reasonable period of time." 47 CFR 1.6003(a).

ColfaxNet first contacted the City regarding the Colfax Hill tower in August of 2017 and filed its Request November 15, 2018.   The City required ColfaxNet to submit a minor use permit application and supporting materials, which ColfaxNet submitted, only to have that application later converted to a major variance application by the City.   Approximately one year later, after several hearings and delays, the City voted to deny ColfaxNet's Request on September 25, 2019 and two months later issued a Findings and Order document.   A total of 314 days elapsed between the date of ColfaxNet's Request and the City vote denying the Request.[3]

Moreover, the City's vote on September 25, 2019 to deny the ColfaxNet Request did not

---

[3] After the City continued the ColfaxNet Request from the April 24, 2019 City Council meeting, ColfaxNet faced unreasonable (and under federal law unlawful) pressure to consider alternative arrangements for its critical wireless facilities – and thus generally consented to continuances from May 22, 2019 to August 14, 2019 to explore possible accommodations with objecting neighboring landowners and evaluate options that proved entirely infeasible.  Even if one were to factor this 84-day period into the Shot Clock, the City still failed to act for 230 days and failed to issue even its deficient order for 285 days – both clearly well in excess of the federal 150-day limit.

even constitute the requisite "final action" on the Request for purposes of compliance with the federally-prescribed time limitation.  Federal Rules provide that "[a]ction or to act on a siting application means a siting authority's grant of a siting application or issuance of a written decision denying a siting application."  47 CFR § 1.6002(a).

The federal statute also mandates (as noted above) that any denial of a request to install a wireless facility "shall be in writing." 47 U.S.C. § 332(c)(7)(B)(iii).  To comply with the statutory "in writing" requirement, a local government must provide "written reasons at essentially the same time as it communicates its denial" of a request.  *City of Roswell*, 135 S. Ct. at 816.

The City thus (a) failed to act upon the ColfaxNet Request within 150 days, (b) failed to issue a written decision within 150 days, and (c) failed to issue a written decision contemporaneously with the City's dispositive City Council denial vote of September 25, 2019.  These failures indisputably violate federal law and warrant summary judgment in favor of ColfaxNet.

Moreover, the City also failed to even meet the deadline mandated by its own City of Colfax Municipal Code for issuance of a written decision.  Section 17.36.110 (Ord. No. 519, 8-8-2012) of the City's Municipal Code requires that "[w]ithin five working days of the action by the approval authority, a notice of action shall be mailed to the applicant at the address appearing on the application or to such other address designated in writing by the applicant."  That deadline passed on October 2, 2019 without any written decision, adding yet another violation of law to the already long list.[4]

As a result of the City's unconscionable delay, ColfaxNet suffered exactly the prejudice deemed unacceptable by the FCC's Shot Clock Order: "unreasonable delays in the personal wireless

---

[4] The City additionally violated its own Municipal Code by failing to have a properly constituted planning commission, which "shall consist of five voting members and one alternate member." Section 2.36.020.

service facility siting applications process [*which*] have obstructed the provision of wireless services." 24 FCC Rcd. at 13994, 14006.

In short, the indisputable facts from the City's own Administrative Record show that the City failed to act on the ColfaxNet Request within a reasonable period of time, in violation of 47 U.S.C. § 332 and 47 C.F.R. §1.6003. A grant of summary judgment to ColfaxNet on the First Cause of Action is therefore appropriate and respectfully requested.

**3)  The City Failed to Approve the ColfaxNet Eligible Facilities Request in Violation of 47 U.S.C. §1455 and 47 C.F.R. §1.6100**

Federal law states that a "local government **may not deny, and shall approve**, any eligible facilities request[.]" 47 U.S.C. §1455(a)(1) (emphasis added). The City unequivocally violated this federal law by denying and failing to approve the ColfaxNet eligible facilities request.

Federal law defines an "eligible facilities request" as a "request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station." 47 U.S.C. §1455(a)(1). ColfaxNet's existing tree tower constitutes a "base station," given that it is: "[a] structure or equipment at a fixed location that enables Commission-licensed or authorized wireless communications between user equipment and a communications network." 47 C.F.R. § 1.6100(b)(1). The federal law definition of "base station" includes "any structure other than a tower that, at the time the relevant application is filed with the State or local government under this section, supports or houses equipment … that has been reviewed and approved under the applicable zoning or siting process, or under another State or local regulatory review process, even if the structure was not built for the sole or primary purpose of providing such support." 47 C.F.R. § 1.6100(b)(1)(iii); *see also Montgomery County, Md. v. FCC*, 811 F.3d at 133. The ColfaxNet tree tower is a structure (and/or equipment) at a fixed location that

enables FCC-licensed and authorized wireless communications (e.g., wireless internet service), and as such is clearly a base station for which an eligible facilities request may be made.

The ColfaxNet Request simply sought to modify the ColfaxNet existing base station by substituting a metal tower for the existing tree tower – without any substantial change in dimensions. The ColfaxNet Request thus clearly constituted an "eligible facilities request for a modification of an existing tower or base station that does not substantially change the physical dimensions of such tower or base station" within the meaning of the federal statute and rules.

Notably, the ColfaxNet Request reflected that the height of the replacement tower would match the height of the existing tree tower. (A.R. COC00084-86, 767-677, 732)[5]  As there would thus be no substantial change to the physical dimensions of the wireless support structure, the Request indisputably fell within the scope of 47 U.S.C. §1455 and 47 C.F.R. §1.6100.

The FCC in its 2014 Wireless Facility Order further defined the federal statutory requirements, and established the specific time period – 60 days – within which a municipality "shall approve" an eligible facility request such as the Request of ColfaxNet here. Codified at 47 C.F.R. § 1.6100(c)(2).  Should the municipality fail to approve the request within 60 days, the request "shall be deemed granted."  47 C.F.R. § 1.6100(c)(4).

---

[5]  The FCC Wireless Facility Order and federal Rules focus on the height of the structure.  While challengers to the FCC Order argued that the Order needed to address "all three spatial dimensions of each facility," the U.S. Court of Appeals in *Montgomery County, Md. v. FCC* stated the court "cannot conclude that it was unreasonable for the FCC to define 'dimensions' without addressing in each instance the height, depth, width, and volume of each object." "Nothing in the text of the statute appears to require such a granular approach." 811 F.3d 121, 130, fn. 6.  When the City improperly changed the type of application required of ColfaxNet to a far more complex application and review, ColfaxNet decided that it may as well ask for approval of a taller tower (but build to only 60') to better serve its future network needs.  Both before and after that point, however, the ColfaxNet Request was for an analogous modification involving the same dimensional height. Notably, one of the Councilmembers inquired of the City Manager concerning the mandate of Section 1455, and received incorrect and misleading guidance. *See* A.R. COC00105.

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

These FCC Rules were upheld by the United States Court of Appeals for the Fourth Circuit in *Montgomery County, Md. v. FCC,* 811 F.3d 121 (2015).  The Court held that "the FCC – pursuant to properly delegated Congressional authority – has preempted state regulation of wireless towers." 811 F.3d at 129.  The Court determined this federal preemption to be "entirely permissible under our system of federalism," and that as a result tower requests are actually deemed granted "by operation of federal law." *Id.*

Given the directive in the federal statute that Defendant "may not deny, and shall approve" the ColfaxNet eligible facilities request, Defendant's actions are clearly violative of federal law. 47 U.S.C. § 1455(a)(1).  The Statute provides that "Applicants…may bring claims [under Section 1455] to any court of competent jurisdiction." 47 U.S.C. § 1455(c)(5).

Defendant further violated federal law by improperly requiring ColfaxNet to submit information wholly irrelevant to evaluation of the eligible facilities request.[6]  The City compounded the violation by then denying ColfaxNet's eligible facilities request on considerations expressly prohibited by Section 1455 and 47 C.F.R. § 1.6100(c)(1). (A.R. COC000004-5, COC000673-674, CFN0026-29, CFN0031-39, CFN0044-47, CN000183-199, CN000213, CN000235-236, CN000258-259, CN000282-285, CN000335-336, CN000339-340)  Such actions unduly burdened ColfaxNet, caused enormous delay, and further violated federal law.

The Administrative Record indisputably demonstrates the City proceeded in violation of Section 1455 of the Act, which "expressly preempts local laws, including [the municipal code], which is plain from its text: the statute provides that states "shall approve" eligible facilities requests "[n]otwithstanding ... any other provision of law. 47 U.S.C. § 1455(a)(1)." *Extenet Systems, Inc. v.*

---

[6] 47 C.F.R. § 1.6100(c)(1) provides that a "local government may not require an applicant to submit any other documentation, including but not limited to documentation intended to illustrate the need for such wireless facilities or to justify the business decision to modify such wireless facilities."

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*Village of Pelham*, 377 F.Supp.3d 217 (SDNY 2019).   Indeed, the U.S. Supreme Court had previously held that the Telecom Act "impose[d] specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115.   Following adoption of Section 1455 and the FCC's implementing Wireless Facility Order and Rules, the U.S. Court of Appeals for the Fourth Circuit specifically upheld federal preemption of wireless tower regulation. *Montgomery County, Md. v. FCC,* 811 F.3d 121, 129.  Requests such as ColfaxNet's are deemed granted "by operation of federal law[.]" *Id.*

Recently, where another municipality also improperly denied an eligible facilities request, the U.S. District Court for the Southern District of New York noted that "in 2012, Congress built upon this regulatory foundation [of the TCA by enacting Section [1455] to 'streamline[ ] the process for siting of wireless facilities by preempting the ability of State and local authorities to delay collocation of, removal of, and replacement of wireless transmission equipment.'" *Extenet Systems, Inc. v. Village of Pelham*, 377 F.Supp.3d 217, citing 158 Cong. Rec. E237-04 (daily ed. Feb. 24, 2012) (statement of Rep. Fred Upton).

Federal District Courts considering municipal violations analogous to the City's have determined injunctive relief to be the proper remedy.   "In the majority of [TCA] cases, the appropriate remedy ... is an order requiring the locality to issue the permit sought." *Crown Castle NG E. Inc. v. Town of Greenburgh,* No. 12-CV-6157, 2013 WL 3357169, at *21 (S.D.N.Y. 2013)*, aff'd,* 552 F. App'x 47 (2d Cir. 2014) (summary order); *see also Extenet Systems, Inc. v. Village of Pelham,* and *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 497 ("[T]he majority of district courts that have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits."); *Orange Cty.-Poughkeepsie Ltd. P'ship v. Town of*

*East Fishkill*, 84 F.Supp.3d 274, 294 (S.D.N.Y.), *aff'd sub nom. Orange Cty.-Cty. Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 632 F. App'x 1 (2d Cir.)

Given that the City failed to approve the ColfaxNet eligible facilities request within 60 days, the ColfaxNet request is "deemed granted" and the City must be directed to immediately issue any necessary permits or approvals for ColfaxNet to effectuate its facilities modification request.

**4)  The City's Regulation of the ColfaxNet Wireless Service Facilities Improperly Considered Radio Frequency Emissions in Violation of 47 U.S.C. §332(c)(7)(B)(iv)**

Federal law provides that:

> No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
> 47 U.S.C. §332(c)(7)(B)(iv).

The City violated this provision of the Act by considering and at least partially basing its denial of the ColfaxNet Request on the environmental effects of radio frequency emissions.  The City's own Administrative Record proves the violation.

United States Courts of Appeal and District Courts considering Section 332(c)(7)(B)(iv) have clarified the application of this statutory prohibition.  In *Telespectrum, Inc. v. Public Service Commission of Kentucky*, the Sixth Circuit "recognize[d] that concerns of health risks due to the emissions *may not constitute substantial evidence in support of denial by statutory rule*, as no state or local government or instrumentality thereof may regulate the construction of personal wireless facilities 'on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions'." 227 F.3d 414, 424 (6th Cir. 2000) (emphasis added).  Two years later, the Sixth Circuit also noted that the "Act explicitly prohibits local board decision-making 'on the basis of the environmental effects of

radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions'." *New Par, d/b/a Verizon Wireless v. City of Saginaw* 301 F.3d 390, 398 (6th Cir. 2002); s*ee also, City of Rancho Palos Verdes* 544 U.S. at 116; *Omnipoint Corporation v. Zoning Hearing Board of Pine Grove Township*, 181 F. 3d 403, 407-9 (3d Cir. 1999). "Environmental effects within in the meaning of the provision include health concerns about the biological effects of RF radiation." See *T-Mobile Northeast LLC v. Town of Ramapo*, 701 F.Supp.2d 446, 460 (S.D. New York 2009), *citing Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 325 (2d Cir. 2000); *Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 n. 3.

Here, the City directly violated the Act by considering and apparently denying the ColfaxNet Request in part due to purported concerns relating to radio frequency emissions. *See* Video recording of April 24, 2019 at A.R. CFN0052-55; Audio recording of April 24, 2019 public hearing at 1:32:00 through 1:41:02 at A.R. CFN0056; A.R. COC000004, CFN0057. The City conducted such violation of federal law under the guise of the City's Municipal Code §17.40.070(G)(4). In fact, the City cited this Code Section in its Findings and Order, asserting that "applicant did not establish that the granting of the variance will not be detrimental to the public health, safety or welfare, or injurious to the property or improvements in such vicinity and land use district in which the property is located, and therefore did not meet the criteria required by the Colfax Municipal Code §17.40.070 G 4 [sic]." (A.R. COC000005)

While it may not be a violation for citizens to comment on radio frequency emissions, it is a violation of federal law for a City to act on such concerns. *See, e.g., T-Mobile Northeast LLC v. Loudoun County Bd. of Sup'rs*, 748 F.3d 185, 200 (4th Cir. 2014) *citing T–Mobile Northeast LLC v. City Council of Newport News*, 674 F.3d 380, 390 (4th Cir. 2012). The City did exactly that when Mayor *pro tem* Marnie Mendoza, at the City Council's April 24, 2019 public hearing and meeting,

distributed materials concerning radio frequency emissions and then espoused and failed to approve the ColfaxNet Request based on purported concerns relating to the facility's radio frequency emissions (citing to the City's Municipal Code, which is clearly preempted in this regard). *See* A.R. CFN0052-55 (Video recording of April 24, 2019 meeting); CFN0056 (Audio recording of April 24, 2019 meeting, at 1:32:00 through 1:41:02); A.R. COC000004, and CFN0057.  Ultimately, Mayor *pro tem* Mendoza (and Councilmember Burruss who apparently also possessed and articulated RF concerns) did vote against the ColfaxNet Request during the fatal September 25, 2019 City Council meeting. *See* CFN0092 at 1:30:58 (Audio recording of Sept. 25, 2019 meeting); A.R. COC000732-734.

"[A]ny decision actually based on environmental effects is a violation, whether other legitimate reasons factored into the decision or not." *See T-Mobile Northeast LLC v. Town of Ramapo*, 701 F.Supp.2d at 460.  Thus, the City's consideration and regulation of a wireless facility based at least in part on the environmental effects of radio frequency emissions is violative of the Act.  Further, a local or state government may not "provide [plaintiff] with one reason for a denial and then, in court, seek to uphold its decision on different grounds." *SPRINTCOM, Inc. v. Puerto Rico Regulations and Permits Admin., et al.*, 553 F.Supp.2d 87, 93 (D. Puerto Rico 2008) citing *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals,* 297 F.3d 14, 21 (1st Cir. 2002) and *Cellular Phone Taskforce v. FCC*, 205 F.3d 82, 88 (2d Cir. 2000).

Notably, the City did not demonstrate at any time throughout its improperly drawn-out application and review process any issue of ColfaxNet facilities' compliance with FCC regulations concerning radio frequency emissions.

Given that the Administrative Record establishes that Defendant repeatedly and publicly considered as part of its deliberative process – and that at least half the voting City Council members

appear to have acted upon – purported concerns over the environmental effects of radio frequency emissions, Defendant clearly violated 47 U.S.C. §332(c)(7)(B)(iv).  The Court respectfully should therefore also grant ColfaxNet summary judgment on its fifth cause of action.

## V. REMEDY

ColfaxNet is respectfully entitled to injunctive relief on an expedited basis pursuant to 47 U.S.C. §§ 332(c)(7)(B)(v) and 1455(a)(1).  Congress has in this area of law "impose[d] specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005).  The appropriate remedy where a municipality such as the City has violated the Act is the issuance of an injunction – in this case ordering the City to grant the ColfaxNet Request and any such other ancillary approvals necessary for the construction of the ColfaxNet wireless facility to proceed without further delay.

Separately, Section 1455 of the Act specifically directs that the City "may not deny, and shall approve" an eligible facilities request.  Given the City's failure to approve the ColfaxNet Request within 60 days, the Request "shall be deemed granted." 47 C.F.R. §1.6100(c)(4).  The Request is thus now approved <u>under federal law</u>, given the federal preemption of local regulation of wireless towers that occurred when the City failed to approve the Request. *Montgomery County, Md. v. FCC*, 811 F.3d 121, 129 (requests are deemed granted "by operation of federal law[.]").

Further, Section 332(c)(7)(B)(ii) of the Act specifically required the City to act on the Request "within a reasonable period of time" – which has been established to be 150 days. 47 C.F.R. §1.6003(c)(iv); *City of Arlington v. FCC*.  Moreover, the City's failure to issue a written denial contemporaneously with the City Council vote also equates to a strict violation of federal law, under Section 332 of the Act. *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293.  Given the City's

---

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

plain failure to act within 150 days – or issue a written denial – the Court is to "hear and decide such action on an expedited basis." 47 U.S.C. §332(c)(7)(B)(v).

Federal Courts considering analogous municipal violations of federal law have likewise determined injunctive relief to be the proper remedy. *See, e.g., T-Mobile USA Inc. v. City of Anacortes*, 572 F.3d at 990 (affirming District Court Order requiring city to issue zoning permits); *T-Mobile West Corp. v. City of Agoura Hills*, 2010 WL 5313398, at *15 (C.D. Cal. 2010); *Extenet Systems, Inc. v. Village of Pelham*, 377 F.Supp.3d 217; *Crown Castle NG E. Inc. v. Town of Greenburgh*, No. 12-CV-6157, 2013 WL 3357169, *aff'd* 552 F. App'x 47; *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490; *Orange Cty.-Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 84 F.Supp.3d 274, *aff'd sub nom. Orange Cty.-Cty. Poughkeepsie Ltd. P'ship v. Town of East Fishkill*, 632 F. App'x 1; *State of Tenn. ex rel. Wireless Income Properties, LLC v. City of Chattanooga*, 403 F.3d 392; *AT&T Wireless Servs. of CA LLC v. City of Carlsbad*, 308 F. Supp. 2d at 1166-67; *Cal. RSA No. 4 (dba Verizon Wireless) v. Madera Cnty.*, 332 F. Supp. 2d at 1303, 1313 (E.D. Cal. 2003) (where no purpose would be served by remand to the agency where a complete record of proceedings is before the court, an order for an injunction or mandamus to the agency "to issue relevant permits is an appropriate remedy"). Consideration of remand to the City would "frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis*." Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 20F. Supp. 2d 875, 878-80 (E.D. Pa. 1998), aff'd 181 F.3d 403 (3d. Cir. 1999).

Accordingly, the Court is respectfully requested to issue an Order, Judgment and/or Writ of Mandate (a) that the ColfaxNet Request is deemed granted pursuant to 47 C.F.R. § 1.6100(c)(4), and under separate grounds (b) directing the City to vacate the City's unlawful denial of the Request, and

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

(c) to immediately issue any and all permits and other approvals for the construction and operation of the ColfaxNet wireless facility pursuant to the Request.

Finally, the record evidence establishes that the City's denial was "not supported by a fair or substantial reason, [or shows] a stubborn insistence on following unauthorized conduct," and as such was arbitrary and capricious. *Zuehlsdorf v. Simi Valley Unified Sch. Dist.* (2007) 148 Cal.App.4th 249, 256 (citations omitted).  Accordingly, ColfaxNet is entitled to and requests an award due to the City's improper action, of $7,500.00 in attorney's fees under California Government Code section 800. *Id.* ColfaxNet also respectfully requests an award of all other allowable attorneys' fees and costs that ColfaxNet has unreasonably been forced to incur.

## VI. CONCLUSION

Considering the clarity of the federal statutes and precedent, federal preemption, and the City's own Administrative Record, this is an exceptionally straightforward case.  Given that there are clearly no genuine issues of material fact relative to ColfaxNet's First, Second, Fourth and Sixth Causes of Action against the City for violation of several distinct provisions of federal law, ColfaxNet respectfully requests the Court grant this motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, and that the Court issue an Order, Judgment and/or Writ of Mandate finding that the ColfaxNet Request is deemed granted pursuant to 47 C.F.R. § 1.6100(c)(4), directing the City to vacate the City's unlawful denial of the Request, and directing the City to immediately issue any and all permits and other approvals for the construction and operation of the ColfaxNet wireless facility pursuant to the Request without condition, obstruction or further delay.

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

2  Dated: August 3, 2020                    REYNOLDS TILBURY WOODWARD LLP

3

4                                          By:____s/Arthur G. Woodward_____
                                             Arthur G. Woodward (SBN: 142914)
5                                            Jake C. Weaver (SBN:  300962)
                                             Reynolds Tilbury Woodward LLP
6                                            11601 Blocker Drive, Suite 105
                                             Auburn, California 95603
7                                            Phone: (530) 885-8500
                                             awoodward@rtwlawllp.com
8

9                                            Andrew M. Klein
                                             Klein Law Group PLLC
10                                           [pro hac vice application pending]
                                             1250 Connecticut Ave NW, Suite 700
11                                           Washington, DC 20036
                                             Phone: (202) 289-6955
12                                           aklein@kleinlawpllc.com

13
                                             Attorneys for Plaintiff ColfaxNet, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF COLFAXNET, LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**