Mark D. Epstein (Bar No. 168221)
Radhika Thanedar (Bar No. 315356)
**WENDEL ROSEN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mepstein@wendel.com
         rthanedar@wendel.com

Attorneys for Defendant City of Colfax

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| ColfaxNet, LLC,<br><br>       Plaintiff,<br><br>   vs.<br><br>City of Colfax,<br><br>       Defendant. | Case No. 2:19-cv-02167-WBS-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO PLAINTIFF COLFAXNET, LLC'S MOTION FOR SUMMARY JUDGMENT; REQUEST FOR EXPEDITED REVIEW UNDER 47 U.S.C. §(c)(7)(B)(v)**<br><br>Judge:    Hon. William B. Shubb<br>Date:     September 8, 2020<br>Time:    1:30 p.m.<br>Crtrm.:  5, 14th Floor |

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

I.     INTRODUCTION ............................................................................................1

II.    MATERIAL FACTS IN SUPPORT OF THE CITY'S OPPOSITION ...............................4

III.   ARGUMENT ...............................................................................................12

     A.     Standards on Summary Judgment ...........................................................12

     B.     The Court is Not Restricted to Reviewing the Administrative Record on
           This Motion As ColfaxNet Erroneously Asserts .........................................12

     C.     The City Reasonably Exercised its Authority Regarding the Placement of
           ColfaxNet's Proposed Tower ...................................................................13

     D.     ColfaxNet Did Not Make an "Eligible Facilities Request" ......................18

     E.     The City Did Not Violate the "Shot Clock Rule" Under 47 USC § 332.................19

     F.     The City Based Its Denial on Substantial Evidence .................................22

     G.     The City Satisfied the "In Writing" Requirement ...................................24

     H.     If For Any Reason The Court is Inclined to Find That ColfaxNet Has Met
           Its Burden on This Motion, The Court Should Postpone Deciding This
           Motion Until ColfaxNet Responds to the City's Outstanding Discovery.................25

IV.    CONCLUSION ...........................................................................................27

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

i

# TABLE OF AUTHORITIES

**Page**

## CASES

Airtouch Cellular v. City of El Cajon,
83 F. Supp. 2d 1158 (S.D. Cal. 2000) .................................................................... 13

Am. Tower Corp. v. City of San Diego,
763 F.3d 1035 (9th Cir., 2014) ............................................................................. 23

Ambat v. City & County of San Francisco
757 F3d 1017 (9th Cir. 2014) ............................................................................... 12

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ............................................................................................. 27

AT&T Mobility Services, LLC v. Village of Corrales,
80 F.Supp.3d 1267 (U.S.D.C., D. New Mexico 2014) ......................................... 13

AT&T Wireless Services of Calif. LLC v. City of Carlsbad,
308 F.Supp.2d 1148 (S.D. Cal. 2003) ................................................................... 13

Bankers Trust Co. v. Pacific Employers Insurance Co.,
282 F.2d 106 (9th Cir. 1960) ............................................................................... 22

Burnside-Ott Aviation Training Center, Inc. v. U.S., C.A.
985 F.2d 1574 (Fed. Cir. 1993) ........................................................................... 27

Calderone v. United States
799 F2d 254 (6th Cir. 1986) ................................................................................. 12

Cellular Telephone Co. v. Town of Oyster Bay,
166 F.3d 490 (2d Cir.1999) .................................................................................. 13

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ....................................................................................... 12, 27

Fontenot v. Upjohn Co.,
780 F2d 1190 (5th Cir. 1986) ............................................................................... 12

Grimmway Enterprises, Inc. v. PIC Fresh Global, Inc.,
548 F.Supp.2d 840 (E.D. Cal. 2008) .................................................................... 12

Helcher v. Dearborn County,
595 F.3d 710 (7th Cir. 210) .................................................................................. 19

Ill. RSA No. 3 v. County of Peoria,
963 F.Supp. 732 (C.D.Ill., 1997) ..................................................................... 1, 19

Lebold v. Inland Steel Co.,
125 F.2d 369 (7th Cir. 1941) ............................................................................... 22

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*MetroPCS, Inc. v. City & Cnty. of S.F.*,
    400 F.3d 715 (9th Cir., 2005) ........................................................................... 23, 24

*National Tower, LLC v. Plainville Zoning Board of Appeals*,
    297 F.3d 14 (1st Cir.2002) ................................................................................ 13, 21

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*
    182 F3d 157 (2nd Cir. 1999) .............................................................................. 12

*New Cingular Wireless PCS, LLC v. Town of Stoddard, New Hampshire*,
    853 F.Supp.2d 198 (D. NH. 2014) .................................................................... 2

*New Par v. City of Saginaw*,
    301 F.3d 390 (6th Cir. 2002) ............................................................................. 21

*Omnipoint Comm. Enters., Inc. v. Town of Amherst*,
    74 F.Supp.2d 109 (D.N.H.1998) ....................................................................... 2

*Pennsylvania Cellular Telephone Corp. v. Zoning Hearing Bd. Buck Tp.*,
    127 F. Supp. 2d 635 (M.D. Pa. 2001) ............................................................... 3

*Peoples National Bank v. Manos Brothers, Inc.*,
    226 S.C. 257, 84 S.E.2d 857, 45 A.L.R.2d 1070 (1954) ................................. 21

*Preferred Sites, LLC v. Troup County*,
    296 F.3d 1210 (11th Cir. 2002) ......................................................................... 21

*Rivera-Torres v. Rey-Hernández*,
    502 F3d 7 (1st Cir. 2007) .................................................................................. 27

*SBA, Inc. v. City of Asheville City Council*,
    141 N.C. App. 19, 539 S.E.2d 18 (2000) ......................................................... 3

*Smale & Robinson, Inc. v. United States*,
    123 F.Supp. 457 (S.D.Cal.1954) ....................................................................... 21

*SNET Cellular, Inc. v. Angell, et al.*,
    99 F.Supp.2d 190 (D.R.I., 2000) ...................................................................... 14, 23

*Southern Calif. Gas Co. v. City of Santa Ana*,
    336 F3d 885 (9th Cir. 2003) .............................................................................. 12

*Southwestern Bell Mobile Sys. v. Todd*,
    244 F.3d 51 (1st Cir., 2001) .............................................................................. 23

*T-Mobile South, LLC v. City of Roswell*,
    574 U.S. 293 (2015) .......................................................................................... 24

*Town of Amherst, N.H. v. Omnipoint Communications Enterprises, Inc.*,
    173 F.3d 9 (1st Cir. 1999) ................................................................................. 3, 13, 14

*U.S. v. Georgia-Pacific Co.*,
    421 F.2d 92 (D. N.H. 1970) .............................................................................. 22

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

023901.0001\5959765.1

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

*Voice Stream PCS I, LLC v. City of Hillsboro,*
 301 F.Supp. 2d 1251 (D. Oregon, 2004) ............................................ 14, 23, 24

*Voicestream Minneapolis, Inc. v. St. Croix County,*
 342 F.3d 818 (7th Cir., 2003) ............................................................ 23

*Zands v. Nelson,*
 797 F.Supp. 805 (S.D Cal. 1992) ...................................................... 12

## STATUTES

47 U.S.C. §1455 ......................................................................................... 2

47 USC § 1455(a) ................................................................................ 18, 19

47 USC § 1455(a)(1) .............................................................................. 18

47 U.S.C. §1455(a)(2) ........................................................................... 1, 2

47 U.S.C §332 ........................................................................................ 23

47 U.S.C §332(c)(7)(A) .......................................................................... 13

47 U.S.C §332(c)(7)(B) .......................................................................... 21

47 U.S.C §332(c)(7)(B)(i) ....................................................................... 14

47 U.S.C. §332(c)(7)(B)(ii) ............................................................. 1, 19, 20

47 U.S.C. §332(c)(7)(B)(iii) ............................................................... 1, 24

47 U.S.C. §332(c)(7)(B)(iv) ..................................................................... 3

47 U.S.C. §332(c)(7)(B)(II) ...................................................................... 1

## OTHER AUTHORITIES

Colfax Municipal Code Section 17.040.070 G 1 ..................................... 16

Colfax Municipal Code Chapter 17.132 ................................................. 14

Colfax Municipal Code Section 17.132.010 ........................................... 15

Colfax Municipal Code Section 17.132.030A-9 ...................................... 15

## RULES

Federal Rule of Civil Procedure 56(a) .................................................... 12

Federal Rule of Civil Procedure 56(d) ............................................. 27, 28

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

iv

# **REGULATIONS**

47 CFR §1.6002 ................................................................................................ 18

47 CFR §1.6100(b)(9) ....................................................................................... 18

47 CFR 1.6100(c)(2) ......................................................................................... 20

47 CFR 1.6100(c)(3) ......................................................................................... 20

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

# I. INTRODUCTION

The Federal Telecommunications Act ("TCA"), pursuant to which plaintiff ColfaxNet, LLC ("ColfaxNet") has brought this case against defendant City of Colfax, California ("City"), preserves the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers, but with some moderate limitations on that authority. Under the TCA, a decision by a state or local government to restrict, impose conditions on, or deny a request for the placement, construction, and/or modification of personal wireless service facilities must: (a) not prohibit or have the effect of prohibiting the provision of personal wireless services (47 U.S.C. §332(c)(7)(B)(II)); (b) be in writing and supported by substantial evidence (47 U.S.C. §332(c)(7)(B)(iii)); and (c) be made within a reasonable time after the request is duly filed, taking into account the nature and scope of such request (47 U.S.C. § 332(c)(7)(B)(ii); *Ill. RSA No. 3 v. County of Peoria,* 963 F.Supp. 732 (C.D.Ill., 1997)). In this case, ColfaxNet cynically takes great pains to try to create the illusion that the City failed to satisfy these requirements.

However, ColfaxNet also takes matters one giant step further by blatantly mischaracterizing the nature of its variance application that gives rise to this case as a mere request to modify "an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station". (Docket No. 22-1 [Colfax Net's Memorandum of Points and Authorities in support of this motion ("MPA")] at 1:20 – 1:21; 2:8 – 2:14; and 21:11 – 21:17.) That is false. In truth, ColfaxNet's application was for a variance to construct a _brand new_ steel telecommunications tower in a location where one has never before existed, not to modify any existing tower or base station. ColfaxNet's intent is to construct the new tower so that the company can relocate (i.e., "collocate") a number of telecommunications antennas and related pieces of apparatus that ColfaxNet has had mounted in one or more nearby trees for more than fifteen years on the new tower. By mischaracterizing the new steel tower that it wants to build as a "modification" of an "existing" facility (i.e., the nearby tree(s)), ColfaxNet is disingenuously attempting to bootstrap its application onto 47 U.S.C. § 1455(a)(2), in an effort to qualify it as something an "eligible facilities request" as that term is defined by the statute, something that

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

023901.0001\5959765.1

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

ColfaxNet's application is not.  47 U.S.C. § 1455(a)(2), if it were applicable, would place more restrictions than otherwise exist on the City's rights to deny ColfaxNet's request.

While a tree may, as a practical matter, be used in lieu of a tower to mount antennas as ColfaxNet has done, by definition a tree is still not a "tower" and vice versa.  A "tower" and a "base station" are defined by statute to be human built structures whereas a tree is, of course, a naturally growing organism.  Moreover, the tower that ColfaxNet wants to construct is substantially larger in area dimensions (width, depth and possibly height) than the existing tree.  Moreover, the construction of the tower would disturb he soils and require the pouring of concrete piers or footers as a foundation which don't presently exist.  Since ColfaxNet's application was to build a brand new tower where one has never existed, it does not qualify as an "eligible facilities request" under 47 U.S.C. § 1455, as ColfaxNet argues, and that statute is inapposite in this case.

ColfaxNet also argues that the City was required to make a decision on its request for a variance within 150 days of November 15, 2018, when the City received its initial application, under the so-called "Shot Clock Rule".  This argument too is without merit.  The "Shot Clock Rule" generally requires that a state or local government or instrumentality thereof act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period* of time after the request *is duly* filed.  A court must take into account the nature and scope of the request that is at issue, as well as the contingencies that may have arisen in connection with the request such as whether: (1) the application review process was delayed by the applicant's failure to submit a complete application or to file necessary additional information in a timely manner; and/or (2) the local authority agreed to extend the time where the application has already been pending for longer than the presumptive timeframe".  (*New Cingular Wireless PCS, LLC v. Town of Stoddard, New Hampshire,* 853 F.Supp.2d 198, 202-203 (D. NH. 2014); *Omnipoint Comm. Enters., Inc. v. Town of Amherst,* 74 F.Supp.2d 109, 121 (D.N.H.1998) ["The prohibition against delay is not absolute and no specific time period within which to pass on applications is prescribed; the limit is one of reasonableness under the circumstances."].)

The City made its decision on ColfaxNet's request within a reasonable time frame under the circumstances, and the 150-day deadline should not be applied in this case, because, among

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

other things, (a) ColfaxNet's tower designs and other relevant application materials and information were slowly submitted to the City in a piecemeal fashion over several months; (b) the proposed size and dimensions of ColfaxNet's proposed tower morphed over time, from a proposed sixty foot height in November 2018 to a proposed eighty foot height in March of 2019; (c) ColfaxNet's principal, Corey Juchau, failed to include a substantial amount of relevant information in his presentation to the City; and (d) Mr. Juchau himself requested several extensions during the time period in question to submit more information and conduct more investigation, requests that the City graciously granted. Mr. Juchau now unfairly and disingenuously seeks to hold the City's own accommodations of his requests against the City.

Perhaps ColfaxNet's most readily disprovable argument is that the City improperly considered the issue of radio frequency emissions in its denial of ColfaxNet's variance application, in violation of 47 U.S.C. § 332(c)(7)(B)(iv) in denying ColfaxNet's request for a variance. Simply stated, the City did not do so, as is proven by the accompanying declarations of the four City Councilmembers who voted on ColfaxNet's application.

ColfaxNet also glibly asserts that the City's denial of its variance application "prohibited the provision of wireless services" (Docket 22-1 [MPA] at 1:25). Consistent with ColfaxNet's presentation of its variance application to the City, ColfaxNet simply left that conclusory argument to stand on its own with no evidence to substantiate it. Indeed, the courts impose *a heavy burden on applicants* to show that a local government's decision has the effect of prohibiting the provision of wireless services, as ColfaxNet alleges in this case. (*See Town of Amherst, N.H. v. Omnipoint Communications Enterprises, Inc.*, 173 F.3d 9 (1st Cir. 1999); *Pennsylvania Cellular Telephone Corp. v. Zoning Hearing Bd. Buck Tp.*, 127 F. Supp. 2d 635 (M.D. Pa. 2001) [communications provider was unable to show evidence that the ordinance was exclusionary]; *SBA, Inc. v. City of Asheville City Council,* 141 N.C. App. 19, 539 S.E.2d 18 (2000) [*petitioners were unable to meet the burden of proving that denial of the permit equaled prohibition*].) ColfaxNet's argument that the City's decision resulted in a prohibition of wireless services is cursory at best, but in reality it is completely devoid of merit.

Finally, while the evidence before the Court is already sufficient to establish that

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1  ColfaxNet's Motion for Summary Judgment lacks merit and should denied, it must be noted that

2  ColfaxNet has attempted to sandbag the City by bringing this motion after having engaged in

3  systematic discovery abuse, by refusing to provide anything other than objections-only responses

4  to the City's long outstanding written discovery, and by refusing to produce the principals of

5  ColfaxNet for their depositions.  Judge Delaney recently issued an order on August 19, 2020

6  (**Docket No. 27**), granting in its entirety the City's motion to compel ColfaxNet's substantive

7  responses to written discovery, and to compel ColfaxNet to produce its principals Corey and

8  Lynele Juchau for their depositions, including the City's request for attorneys' fees.  (**Docket No.**

9  **27 at 9:22 – 10:16**.)  In her order, Judge Delaney found that the objections upon which ColfaxNet

10  based its refusal to respond to discovery were meritless (**Docket No. 27 at 3:11 – 6:14**.), and that

11  ColfaxNet took unfair advantage of the City by making "multiple requests for extensions" of its

12  deadline to respond to the City's discovery, which the City granted in good faith, only to serve

13  nothing but meritless objections to each and every discovery request and deposition notice in the

14  end.  (**Docket No. 27 at 8:11 – 9:7**.)  Not to put too fine a point on it, but all of this misuse of the

15  discovery process took place after ColfaxNet agreed to participate in such discovery in the parties'

16  February 18, 2020 Joint Status Report (**Docket No. 7**).  Accordingly, if for any reason the Court

17  deems otherwise, then pursuant to Fed. R. Civ. P. 56(d), ColfaxNet respectfully requests that the

18  Court postpone its decision on this motion until ColfaxNet has responded to the City's long

19  outstanding written discovery and produces its two principals, Corey and Lynelle Juchau, for their

20  depositions.

21  **II.     MATERIAL FACTS IN SUPPORT OF THE CITY'S OPPOSITION**

22       On or about November 15, 2018, Colfax City Planning Director Amy Feagans received an

23  application from Corey Juchau, the owner and principal of plaintiff ColfaxNet, LLC, for a

24  proposed new steel telecommunications tower that ColfaxNet, LLC wanted to construct on an

25  undeveloped parcel of property owned by Mr. Robert Amick, in a residential area of the City

26  commonly known as "Beacon Hill".  (City's Separate Statement of Material Facts ("FACT"), No.

27  1; Declaration of Amy Feagans in support of this opposition ("Feagans Decl."), ¶ 4 and Exhibit B

28  thereto.)  Mr. Juchau called and met with Ms. Feagans a number of times before and after he

1   submitted ColfaxNet's application and advised Ms. Feagans that he intended to construct a brand

2   new steel tower on Mr. Amick's property, adjacent to a dead or dying pine tree in which he had

3   previously mounted some antennas and other telecommunications equipment that were part of the

4   wireless communications services network that ColfaxNet, provided to local customers without

5   first obtaining a permit from the City.  (FACT No. 2; Feagans Decl., ¶ 4.)  It was ColfaxNet's

6   intent to move and collocate a number of antennas and related apparatus on the new tower.  (*Ibid.*)

7        ColfaxNet represented in November of 2018 that the company intended to construct a new

8   sixty-foot tall, three-legged, lattice steel tower to mount some of its existing wireless

9   communications antennas that it had previously installed years earlier in the dead pine tree.

10  (FACT No. 3; Feagans Decl., ¶ 5 and Exhibit B at pp. COC000163, and COC000053 through

11  COC000069 .)  Mr. Juchau further advised the City in his letter dated November 13, 2019 that

12  ColfaxNet also intended to install a new waterproof equipment enclosure or shed near the tower in

13  order to shield the electronic equipment that was needed to provide power to the devices that

14  would be installed on the new tower.  (FACT No. 4; *Ibid.*)

15       As Ms. Feagans reviewed ColfaxNet's application package in the weeks that followed

16  November 15, 2018, Mr. Juchau called her several times and said that he hoped that the proposed

17  new tower could be handled as an administrative permit matter, and not something that would

18  require a variance or conditional use permit that would necessitate a public hearing before the

19  Colfax City Council.  (FACT No. 5; Feagans Decl., ¶ 6.)  In his application and in his

20  communications with Ms. Feagans, Mr. Juchau described the proposed tower as being sixty (60)

21  feet tall, and Ms. Feagans consulted with Colfax City Manager, Wes Heathcock, to try to find a

22  way to accommodate Mr. Juchau's request to have his application handled as an administrative

23  permit rather than as a conditional use permit and/or a variance application that would require a

24  public hearing.  (FACT No. 6; *Ibid.*)

25       By late December 2018, it became apparent to Ms. Feagans based on the materials that

26  were included with ColfaxNet's application, that the proposed new tower could not be constructed

27  without a zoning variance because the documents showed that it would be constructed less than

28  ten (10) feet away from the nearest boundaries with the adjacent parcels to the north and east of

5

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Mr. Amick's parcel, on which it was to be constructed. (FACT No. 7; Feagans Decl., ¶ 7.) Colfax Municipal Code Section 17.132.030 A-9 states that, "Telecommunication facilities located on a lot adjacent to a residential zone district shall be set back from the residential zone by two feet for each one foot of total height. The required setback shall be measured at its widest potential position." (FACT No. 8; Feagans Decl., ¶ 7 and Exh. C; *and see*

https://library.municode.com/ca/colfax/codes/code_of_ordinances?nodeId=TIT17ZO_ARTVSPA RSPUSRE_CH17.132ANCOFA_17.132.030GEST.) With respect to ColfaxNet's proposed sixty-foot tower, this Municipal Code Section required that it be constructed at least 120 feet from the nearest property boundary line. (FACT No. 9; *Ibid.*) This means that the new tower could not be constructed where ColfaxNet wanted it unless the City Council granted a variance.

Ms. Feagans had several discussions with Mr. Juchau in December 2018 and early January 2019 regarding the problems that the City's setback requirement in Municipal Code Section 17.132.030 A-9 created for his proposed tower, and advised him that he would either need to apply for a variance, which would require a public hearing, or he would need to construct the tower so that it would be set back at least 120 from the property's boundary lines. (FACT No. 10; Feagans Decl., ¶ 8.). Mr. Juchau gave Ms. Feagans a lot of pushback, arguing that ColfaxNet's proposed tower didn't require a variance because they had an easement from the property owner to build the tower adjacent to the dead tree in which their antennas and equipment were currently mounted. (FACT No. 11; *Ibid.*) Ms. Feagans explained to Mr. Juchau that despite the limited size of their easement area, ColfaxNet would still need to apply for a variance or move the location of the tower to a place that was at least 120 feet from the boundaries. (FACT No. 12; *Ibid.*) Each time that Ms. Feagans told Mr. Juchau that he would need to apply for a variance unless he constructed his proposed tower in a location that complied with the City's setback requirements, Mr. Juchau responded that he wanted to find a way to avoid a public hearing before the City Council if at all possible. (FACT No. 13; *Ibid.*)

Later in January of 2019, after Ms. Feagans had repeatedly told Mr. Juchau that he would have to request a variance, which she also explained would require a public hearing before the City Council, Mr. Juchau advised her that he wanted some extra time before his application was

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

set for a hearing because he wanted: (a) to explore whether ColfaxNet had other potential options to its proposed sixty-foot tower; and (b) wanted to discuss the matter with the owners of the neighboring parcels to try to dissuade them from opposing his variance request. (FACT No. 14; Feagans Decl., ¶ 9; Declaration of Wes Heathcock in support of the City's opposition to this motion ("Heathcock Decl."), ¶ 4.).

On March 7, 2019, Ms. Feagans wrote an email to Mr. Juchau in which she advised him that she was starting work on the notice and staff report for the City Council hearing on his variance request, and that she needed him to provide her with a better example of the proposed tower since the prior illustration he provided (Exhibit #12 to the application) was not of a tower that was specifically sixty feet tall, as well as an exhibit with an image of the proposed tower super-imposed in the actual location where it was intended to be placed. (FACT No. 15; Feagans Decl., ¶ 10 and Exh. D.) On March 12, 2019, Mr. Juchau wrote a response email to Ms. Feagans' email of March 7, 2019, in which he stated that he had another picture of the proposed tower, one in which he could "edit it down to 80'" for Ms. Feagans, a photograph he said he would provide to Ms. Feagans as soon as possible. (FACT No. 16; Feagans Decl., ¶ 11 and Exh. E.) In ColfaxNet's application and in all of his prior communications with Ms. Feagans, Mr. Juchau had described the proposed tower as being sixty feet tall. (FACT No. 17; Feagans Decl., ¶ 11.) This was the first time that Mr. Juchau had mentioned that the proposed tower was to be eighty feet tall. (FACT No. 18; *Ibid.*) If in fact his proposed tower was to be eighty feet tall rather than sixty feet tall, that would require that it be set back at least 160 feet from the property's boundary lines under Colfax Municipal Code Section 17.132.030 A-9. (FACT No. 19; Feagans Decl., ¶ 11; Heathcock Decl., ¶ 4 and Exh. A.)

Thereafter, between March 12, 2019 and the date of scheduled City Council hearing on April 24, 2019, ColfaxNet vacillated as to the height of its proposed new tower. Mr. Juchau would not commit as to whether the height of the tower would be sixty feet, eighty feet, or somewhere in between. (FACT No. 20; Feagans Decl., ¶ 12.)

ColfaxNet's variance application was set for a public hearing before the City Council on April 24, 2019. (FACT No. 21; Feagans Decl., ¶ 13 and Exh. F; Heathcock Decl., ¶ 5;

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Declarations of City Councilmembers Kim Douglass, Marnie Mendoza, Trinity Burruss and Sean Lomen [collectively "City Councilmembers Declarations"] at ¶ 2 of each.)  At the April 24, 2019 hearing, Mr. Juchau made a presentation to the City Council on behalf of ColfaxNet, but he would not definitively state whether ColfaxNet's proposed tower would be sixty or eighty feet tall. (FACT No. 22; Feagans Decl., ¶¶ 13 and 14, Exhs. F and G; Heathcock Decl., ¶ 6 and Exh. C; City Councilmembers Declarations at ¶ 2 of each.)  There was a significant amount of public comment at the hearing both in support of and in opposition to ColfaxNet's requested setback variance.  (FACT No. 23; Feagans Decl., ¶ 14, Exh. G; Heathcock Decl., ¶ 6 and Exh. C.)  The City's Mayor recused himself and was not present for any portion of the hearing.  (FACT No. 24; Feagans Decl., ¶ 14, Exh. G; Heathcock Decl., ¶ 6 and Exh. C; City Councilmembers Declarations at ¶ 2 of each.)

After the public hearing on April 24, 2019, four of the five City Council members discussed the proposed variance at length and then voted to continue the matter to the next City Council meeting on May 22, 2019, to allow Mr. Juchau some additional time to provide relevant information that he did not have at the April 24, 2019 meeting, and to identify whether ColfaxNet had any available alternatives to constructing a new tower in the proposed location within the required 120-foot to 160-foot setback area.  (FACT No. 25; *Ibid.*)  The additional information that the City Council asked Mr. Juchau to provide included:  (a) confirmation that the public utility, PG&E had given him approval to provide power to his proposed new tower facility; (b) a professional survey showing the location of the dead tree; (c) a more detailed description of ColfaxNet's proposed use of the new tower space adjacent to the dead tree; and (d) a description of ColfaxNet's potential options in lieu of the tower. (FACT No. 26; *Ibid.*)

In advance of the May 22, 2019 City Council hearing, Mr. Juchau provided some of the additional information to City Staff that had been requested of him at the April 24, 2019 hearing, but he did not yet have the requested survey of the dead tree.  (FACT No. 27; Feagans Decl., ¶ 15, and Exh. H; Heathcock Decl., ¶ 7 and Exh. D.)  Mr. Juchau offered that he would complete the tree survey prior to construction of his proposed tower but City Planning Director Amy Feagans and City Manager Wes Heathcock preferred to have that survey submitted to City Council before

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

they voted on the issue because it was still unclear whether the tower would be sixty or eighty feet tall, and that was an issue that should be considered as compared to the height of the tree. (FACT No. 28; *Ibid.*) Also, Mr. Juchau had only provided some superficial information regarding the potential alternatives that ColfaxNet had in lieu of installing the tower. (FACT No. 29; *Ibid.*)

In a letter to Ms. Feagans dated May 4, 2019, Mr. Juchau wrote: (a) that he had inspected the property "on Colfax Hill to determine [the] feasibility of locating [the proposed] tower at different locations" on the property, without providing any specifics; (b) that he had requested "feasibility and price quotes" from companies that owned two existing nearby towers but that he was still awaiting responses from those companies; (c) in summary and conclusory fashion that it "would not work" to relocate his antennas to the existing nearby towers "without significant reorientation of other sites' antennas" but without providing any specific information or data on which he based that conclusion. (FACT No. 30; Feagans Decl., ¶ 15, and Exh. H [at pages COC000359 - COC000360].) Mr. Juchau still did not have a substantial portion of the information that the City Council had asked him to provide at the previous hearing on April 24, 2019, so the matter was again continued to the June 26, 2019 City Council meeting at Mr. Juchau's request. (FACT No. 31; Feagans Decl., ¶ 15; Heathcock Decl., ¶ 7.)

ColfaxNet's variance application was subsequently pulled from the June 26, 2019 City Council meeting agenda at Mr. Juchau's request in order to allow him an opportunity to negotiate a potential alternative resolution with the owner of one of the neighboring parcels, Thomas Swick, whom Mr. Juchau advised was prepared to allow Mr. Juchau to relocate his antennas from the dead tree to one or more trees on Mr. Swick's property. (FACT No. 32; Feagans Decl., ¶ 16; Heathcock Decl., ¶ 8; Declaration of Mark D. Epstein in support of the City's opposition to this motion ("Epstein Decl."), ¶ 2 and Exh. A [Transcript of Deposition of Thomas Swick] at 111:5 – 113:4; 113:21 – 114:17 and Exh. 7 thereto.) The matter was then once again continued to the agenda for the July 24, 2019 regular City Council meeting at Mr. Juchau's request. (FACT No. 33; Feagans Decl., ¶ 16; Heathcock Decl., ¶ 8.)

ColfaxNet's variance application was subsequently pulled once again from the July 24, 2019 City Council meeting agenda at Mr. Juchau's request. (FACT No. 34; Feagans Decl., ¶ 17;

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   Heathcock Decl., ¶ 9).  Mr. Juchau and Mr. Swick were still in the midst of negotiations and Mr.

2   Juchau was still considering his potential alternative options to constructing a new tower.  (FACT

3   No. 35; Feagans Decl., ¶ 17; Epstein Decl., ¶ 2 and Exh. A at 111:5 – 113:4; 113:21 – 114:17 and

4   Exh. 7 thereto.)  However, at that time ColfaxNet's application was not set for a new hearing date

5   because the City anticipated that Mr. Juchau would reach a negotiated resolution with Mr. Swick.

6   (FACT No. 36; Feagans Decl., ¶ 17; Heathcock Decl., ¶ 9.)  Several weeks later, ColfaxNet's

7   application was placed on the agenda for the regular City Council meeting on September 25, 2019,

8   at ColfaxNet's request.  (FACT No. 37; *Ibid.*)

9        At the September 25, 2019 City Council meeting, Mayor Joe Fatula once again recused

10  himself and was not present for the hearing on ColfaxNet's variance application.  (FACT No. 38;

11  Feagans Decl., ¶ 18 and Exh. I; Heathcock Decl., ¶ 10 and Exh. E).  The City Council reopened

12  the public hearing where eight proponents and three opponents and an attorney for one of the

13  opponents of ColfaxNet's application spoke.  (FACT No. 39; *Ibid.*)  Mr. Juchau himself and his

14  attorney, R. Monti Reynolds also spoke at the hearing.  (FACT No. 40; *Ibid.*)  The City Council

15  also formally received additional written information that Mr. Juchau had gathered since the April

16  24, 2019 hearing.  (FACT No. 41; *Ibid.*)  Mr. Juchau was also permitted to make a further oral

17  presentation.  (FACT No. 42; *Ibid.*)  The additional written information that the City Council

18  received at the September 25, 2019 meeting included the Staff Report that Ms. Feagans and Mr.

19  Heathcock prepared and Attachments 1 through 9 thereto.  (FACT No. 43; Feagans Decl., ¶ 18

20  and Exh. I; Heathcock Decl., ¶ 10 and Exh. E [see pages COC000592 through COC000617of

21  Exhibits I and E].)  The City Council also considered an email dated September 24, 2019 from

22  Dwayne Armstrong, a letter dated September 24, 2019 from ColfaxNet's attorney R. Monti

23  Reynolds, a September 24, 2019 letter from Ken and Cheri Wall, as well as five color photographs

24  of the project site that were submitted to the Council at the hearing.  (FACT No. 44; *Ibid.*)

25       At the conclusion of the September 25, 2019 meeting, the City Council members who

26  voted on the matter, Sean Lomen, Trinity Burruss, Kim Douglass, and Marnie Mendoza made and

27  voted "yes" on a motion to deny ColfaxNet's variance request.  (FACT No. 45; Feagans Decl., ¶

28  19 and Exh. I; Heathcock Decl., ¶ 11 and Exhs E and F.)

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1    Following the September 25, 2019 City Council meeting, City Attorney Alfred Cabral, Ms.

2  Feagans and Mr. Heathcock prepared the first draft of the written Finding and Order adopting the

3  City Council's decision to deny ColfaxNet's setback variance application in accordance with City

4  protocol, and they had it placed on the agenda to be formally adopted by the City Council at their

5  scheduled regular meeting on October 23, 2019.  (FACT No. 46; Feagans Decl., ¶ 20; Heathcock

6  Decl., ¶ 12.)  However, prior to that meeting, a number of wildfires developed in this area that

7  resulted in a series of PG&E public safety power shutdowns, from October 9 through 11 of 2019,

8  and again on October 23, 2019 itself so that the City Council meeting that was scheduled for that

9  evening had to be cancelled.  (FACT No. 47; Feagans Decl., ¶ 20; Heathcock Decl., ¶ 13)  Then, a

10  third PG&E public safety shutdown went into effect on October 26 through October 28 of 2019,

11  and even a fourth PG&E public safety shutdown went into effect on October 29, 2019 that lasted

12  for another twenty-four hours.  (FACT No. 48; Feagans Decl., ¶ 20; Heathcock Decl., ¶ 13).

13  Colfax City Hall does not have backup electricity generation capabilities and City Council

14  meetings take place in the evenings, so the City Council had to postpone its meetings that were

15  scheduled during this period of the PG&E public safety shutdowns.  (FACT No. 49; Feagans

16  Decl., ¶ 20.)

17    The City Council held an emergency meeting on October 30, 2019 to adopt a proclamation

18  declaring a local emergency as a result of the PG&E public safety shutdowns, and the formal

19  adoption of the City Council's September 25, 2019 findings on ColfaxNet's variance application

20  did not qualify as an emergency.  (FACT No. 50; Feagans Decl., ¶ 21; Heathcock Decl., ¶ 14.)

21  The first regularly scheduled City Council meeting following the series of PG&E public safety

22  shutdowns described above did not take place until November 13, 2019, at which time the City

23  Council formally adopted its September 25, 2019 findings on ColfaxNet's variance application,

24  upon which Resolution No. 50-2019 was adopted, formally approving the City Council's findings

25  and order denying ColfaxNet's variance request.  (FACT No. 51; Feagans Decl., ¶ 22 and Exh. J;

26  Heathcock Decl., ¶¶ 11 and 14, and Exhibit F; City Councilmembers Declarations at ¶¶ 3 and 4 of

27  each, and Exhs. A thereto.)

28

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1 **III. ARGUMENT**

2  **A. Standards on Summary Judgment**

3   The party moving for summary judgment bears the initial burden of proof as to each

4 material fact upon which it has the burden of persuasion at trial, as well as the ultimate burden of

5 proving that there is "no genuine dispute as to any material fact and the movant is entitled to

6 judgment as a matter of law." (Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–

7 23 (1986); *Southern Calif. Gas Co. v. City of Santa Ana,* 336 F3d 885, 888 (9th Cir. 2003).) The

8 showing must by the moving party be sufficient for the court to hold that no reasonable trier of

9 fact could find other than for the moving party. (*Calderone v. United States* 799 F2d 254, 259

10 (6th Cir. 1986); *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F3d 885, 888, *supra*.)

11   Where, as ColfaxNet does here, the plaintiff seeks summary judgment, its burden is to (a)

12 demonstrate affirmatively by admissible evidence that there is no genuine dispute of material fact

13 as to each element of its claims for relief, entitling it to judgment as a matter of law; and also to (b)

14 demonstrate the lack of any genuine dispute of material fact as to affirmative defenses asserted by

15 the defendant. (*Fontenot v. Upjohn Co.*, 780 F2d 1190, 1195 (5th Cir. 1986); *Zands v. Nelson*,

16 797 F.Supp. 805, 808 (S.D Cal. 1992); *Grimmway Enterprises, Inc. v. PIC Fresh Global, Inc.*, 548

17 F.Supp.2d 840, 845 (E.D. Cal. 2008).) Because summary judgment is a "drastic device," cutting

18 off a party's right to present its case to a jury, the moving party bears a "heavy burden" of

19 demonstrating the absence of any triable issue of material fact. (*Ambat v. City & County of San*

20 *Francisco* 757 F3d 1017, 1031 (9th Cir. 2014); *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n,*

21 *Inc.* 182 F3d 157, 160 (2nd Cir. 1999).)

22  **B. The Court is Not Restricted to Reviewing the Administrative Record on This
23    Motion As ColfaxNet Erroneously Asserts**

24   ColfaxNet argues that the City's administrative record is the only relevant evidence that the

25 court may consider on this motion (Docket 22-1 [ColfaxNet's MPA] at 12:7 – 13:17.) As this

26 Court recognized in ruling on the City's motion to compel ColfaxNet to respond to its discovery,

27 this argument is frivolous and misleading. (See Docket No. 27 at 4:6 – 4:23.) Indeed, ColfaxNet

28 has failed to cite to a case that stands for such a proposition. To the contrary, the published

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   opinions that are on point actually stand for the opposite principle, that a court in deciding a claim

2   that seeks relief pursuant to the TCA may consider evidence that is extrinsic to the administrative

3   record.  (*Airtouch Cellular v. City of El Cajon*, 83 F. Supp. 2d 1158, 1164 (S.D. Cal. 2000); *Town of*

4   *Amherst, N.H. v. Omnipoint Commc'ns Enterprises, Inc*., 173 F.3d 9, 16, *supra*,  at n.7 [noting that

5   effective prohibition claims present issues "for which outside evidence may be essential"]; *AT&T*

6   *Mobility Services, LLC v. Village of Corrales,* 80 F.Supp.3d 1267, 1269 (U.S.D.C., D. New

7   Mexico 2014).)

8   At most, the cases that ColfaxNet erroneously asserts stand for the proposition that the

9   court is somehow limited to reviewing the administrative record are silent on the issue, and in

10  those cases where the courts decided to limit their review to the administrative record, the only

11  issues before the courts were whether the cities based their zoning decisions on substantial

12  evidence.  (*See AT&T Wireless Services of Calif. LLC v. City of Carlsbad*, 308 F.Supp.2d 1148,

13  1155 (S.D. Cal. 2003); *citing Cellular Telephone Co. v. Town of Oyster Bay*, 166 F.3d 490, 495,

14  497 (2d Cir.1999);  *National Tower, LLC v. Plainville Zoning Board of Appeals*, 297 F.3d 14, 22

15  (1st Cir.2002); and *Airtouch Cellular v. City of El Cajon*, 83 F.Supp.2d 1158, 1164

16  (S.D.Cal.2000).)

17  As Judge Delaney noted in her order granting the City's motion to compel ColfaxNet to

18  respond to its discovery, "[A] court's reliance on the administrative record—without holding that

19  it is bound to such record—does not equate to a court being judicially precluded from relying on

20  evidence beyond the administrative record.  Plaintiff's statements and misleading citations to the

21  contrary miss this elementary point." (Docket No. 27 at 4:19 – 4:23.)

22      **C.    The City Reasonably Exercised its Authority Regarding the Placement of
            ColfaxNet's Proposed Tower**
23

24  ColfaxNet argues that the City violated the TCA and/or abused its discretion in denying its

25  application for a variance to construct a new sixty to eighty foot tall, three legged steel tower

26  within ten feet of the property boundary line.  ColfaxNet's position is absurd.

27  47 USCS §332(c)(7)(A), part of the statutory rubric that makes up the TCA, provides, in

28  part, that, "Nothing in this Act shall limit or affect the authority of a State or local government or

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1  instrumentality thereof over decisions regarding the placement, construction, and modification of

2  personal wireless service facilities."  Among the limitations, the state or local government may

3  impose reasonable restrictions so long as they do not unreasonably discriminate among providers

4  of functionally equivalent services and do not prohibit the provision of personal wireless services.

5  47 USCS §332(c)(7)(B)(i).  Short of a local law that "expressly bans wireless communications

6  facilities or establishes a criteria that no one could satisfy, there is no bright line test for

7  determining whether local regulation prohibits or has the effect of prohibiting wireless services."

8  (*SNET Cellular, Inc. v. Angell, et al*., 99 F.Supp.2d 190, 197 (D.R.I., 2000).

9       Rather, the TCA seeks to strike a compromise between a carrier's desire to construct

10  facilities that provide the maximum coverage at minimum cost and a municipality's desire to

11  minimize any adverse impact that such facilities may have on the local community.  (*Id. at 197;*

12  *citing Town of Amherst, N.H. v. Omnipoint Commc'ns Enterprises, Inc*., 173 F.3d at 14, *supra*.)

13  Furthermore, because Congress reserved a considerable measure of discretion to the local

14  communities, the carrier bears a "heavy burden" of showing from language or circumstances not

15  just that the application has been rejected, but that further reasonable efforts are so likely to be

16  fruitless *that it is a waste of time even to try*.  (*Ibid*.)

17       Therefore, there are three circumstances under which a federal court can reverse a local

18  zoning board's denial of a permit for a cell-phone tower: (1) When the board's denial is not

19  supported by substantial evidence contained in a written record, (2) When the board's decision

20  prohibits or has the effect of prohibiting the provision of personal wireless services, and (3) When

21  the board's decision unreasonably discriminates among providers of functionally equivalent

22  services. *Voice Stream PCS I, LLC v. City of Hillsboro*, 301 F.Supp. 2d 1251, 1255 (D. Oregon,

23  2004).  ColfaxNet has failed to establish that any one of these exceptions applies here.

24       Under Chapter 17.132 of its Municipal Code, the City has established reasonable standards

25  for the placement of telecommunication facilities in all of the City's zoning districts, the intent of

26  which are to "minimize the adverse impacts of such equipment and structures on neighborhoods

27  and surrounding developments in the City by limiting the height, number, and location of such

28  devices."  (*See*

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   https://library.municode.com/ca/colfax/codes/code_of_ordinances?nodeId=TIT17ZO_ARTVSPA

2   RSPUSRE_CH17.132ANCOFA_17.132.030GEST at Section 17.132.010.)  In furtherance of the

3   City's appropriate and sensible policy of reasonably mitigating the adverse impact that steel towers

4   and new telecommunications facilities will have on neighborhoods and surrounding developments

5   in the City, Municipal Code Section 17.132.030A-9 fittingly provides that telecommunication

6   facilities that are located on a lot adjacent to a residential zone district must be set back from the

7   residential zone by two feet for each one foot of total height.  (*Ibid*.)

8       ColfaxNet has an easement on the parcel of property owned by Robert Amick, where the

9   company wishes to construct its new tower.  (FACT No. 1 and 11; Feagans Decl., ¶ 4 and Exh. B,

10  and ¶¶ 8 and 14, and Exh. G; ColfaxNet's MPA at 6:6 – 6:17.)  After the initial public hearing on

11  ColfaxNet's application for a variance to construct its proposed new steel tower approximately ten

12  feet from the nearest property boundaries in violation of Municipal Code Section 17.132.030A-9

13  took place on April 24, 2019, the City agreed to continue the hearing and postpone its decision a

14  number of times, most of them at ColfaxNet's request, out of a courtesy to ColfaxNet in order to

15  allow the company's principal owner Corey Juchau an opportunity to accumulate and present

16  material information that was missing from ColfaxNet's application, to clarify some ambiguities in

17  ColfaxNet's application such as the height of its proposed new tower, and to afford Mr. Jucahu an

18  opportunity to negotiate with the neighbor of one of the adjacent parcels regarding a potential

19  alternative to the tower of installing ColfaxNet's antennas and equipment in one or more trees on

20  Mr. Amick's property.  (FACT Nos. 22-37 and supporting evidence.)

21      At both the April 24, 2019 and September 25, 2019 hearings on ColfaxNet's application,

22  the City considered a plethora of evidence and arguments in favor of and opposition to

23  ColfaxNet's application, which are detailed in Exhibits F through I to the Declaration of Amy

24  Feagans, Exhibits B, D, and E to the Declaration of Wes Heathcock, and the Declarations of the

25  City Councilmembers.  (FACT Nos. 38 through 45 and supporting evidence.)  Among other

26  things, the City Council  duly considered the oral arguments of at least eight proponents and three

27  opponents and an attorney for one of the opponents of ColfaxNet's application (FACT No. 39 and

28  supporting evidence); oral presentations by Corey Juchau himself and his attorney, R. Monti

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   Reynolds (FACT No. 40 and supporting evidence); additional written information that Mr. Juchau

2   had gathered since the April 24, 2019 hearing at the September 25, 2019 hearing (FACT No. 41

3   and supporting evidence); as detailed in the Staff Report that Amy Feagans and Wes Heathcock

4   prepared following the September 25, 2019 hearing and Attachments 1 through 9 thereto.  (FACT

5   No. 43; Feagans Decl., ¶ 18 and Exh. I; Heathcock Decl., ¶ 10 and Exh. E [see pages COC000592

6   through COC000617of Exhibits I and E].)

7           In addition, the City Council also considered an email dated September 24, 2019 from

8   Dwayne Armstrong, a letter dated September 24, 2019 from ColfaxNet's attorney R. Monti

9   Reynolds, a September 24, 2019 letter from Ken and Cheri Wall, as well as five color photographs

10  of the project site that were submitted to the Council at the hearing.  (FACT No. 44 and

11  supporting evidence.)

12          At the conclusion of the September 25, 2019 meeting, the City Council members who

13  voted on the matter, Sean Lomen, Trinity Burruss, Kim Douglass, and Marnie Mendoza made and

14  voted "yes" on a motion to deny ColfaxNet's variance request.  (FACT No. 45 and supporting

15  evidence.)  After considering all of the evidence described above, the City Council decided to

16  deny ColfaxNet's application because, the City Council found, that:

17          (a)     ColfaxNet not establish to the City Council's satisfaction, that there are special

18  circumstances applicable to the property where the proposed tower was to be constructed such that

19  the strict application of the City's setback requirement would deprive the property of privileges

20  that are enjoyed by other property owners in the vicinity and under identical land use, and

21  therefore did not meet the criterial required for the variance under Colfax Municipal Code Section

22  17.040.070 G 1 (FACT No. 51; Feagans Decl., ¶ 22 and Exh. J (at p. COC000761); Heathcock

23  Decl., ¶¶ 11 and 14, and Exhibit F (at p. COC000761); City Councilmembers Declarations at ¶¶ 3

24  and 4 of each, and Exhs. A thereto (at p. COC000761).);

25          (b)     ColfaxNet did not establish to the City Council's satisfaction that the granting of the

26  requested variance under the circumstances would not constitute a grant of special privileges

27  inconsistent with the limitations upon other properties in the vicinity and zone in which the

28  property is located, and therefore did not meet the criterial required for the variance under Colfax

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1  Municipal Code Section 17.040.070 G2. (FACT No. 51; Feagans Decl., ¶ 22 and Exh. J(at p.

2  COC000761); Heathcock Decl., ¶¶ 11 and 14, and Exhibit F(at p. COC000761); City

3  Councilmembers Declarations at ¶¶ 3 and 4 of each, and Exhs. A thereto (at p. COC000761).);

4  (c)  The granting of the requested variance would not allow a use or activity on the

5  property which is  not otherwise expressly authorized by the regulations governing the subject

6  parcel as required by Colfax Municipal Code Section 17.040.070 G3. (FACT No. 51; Feagans

7  Decl., ¶ 22 and Exh. J (at p. COC000761); Heathcock Decl., ¶¶ 11 and 14, and Exhibit F (at p.

8  COC000761); City Councilmembers Declarations at ¶¶ 3 and 4 of each, and Exhs. A thereto (at p.

9  COC000761).);

10  (d)  ColfaxNet failed to establish to the City Council's satisfaction that the granting of

11  the requested variance will not be detrimental to the public health, safety or welfare, or would not

12  be injurious to the property or improvements in the vicinity and land use district in which the

13  property is located, and therefore that the variance request did not meet the criterial required for

14  the variance under Colfax Municipal Code Section 17.040.070 G4. (FACT No. 51; Feagans

15  Decl., ¶ 22 and Exh. J (at p. COC000761); Heathcock Decl., ¶¶ 11 and 14, and Exhibit F (at p.

16  COC000761); City Councilmembers Declarations at ¶¶ 3 and 4 of each, and Exhs. A thereto (at p.

17  COC000761));

18  (e)  The variance application, if approved, would substantially change the physical

19  dimensions of the existing telecommunications facilities, which were mounted in a natural tree as

20  opposed to on a human built structure or edifice. (FACT No. 51; Feagans Decl., ¶ 22 and Exh. J

21  (at p. COC000761); Heathcock Decl., ¶¶ 11 and 14, and Exhibit F (at p. COC000761); City

22  Councilmembers Declarations at ¶¶ 3 and 4 of each, and Exhs. A thereto (at p. COC000761)); and

23  finally,

24  (f)  To the extent that granting or denying the variance application was a discretionary

25  act, the City Council exercised its discretion to deny the application _**based on the entire record**_

26  _**before it.**_  (FACT No. 51; Feagans Decl., ¶ 22 and Exh. J (at p. COC000761); Heathcock Decl., ¶¶

27  11 and 14, and Exhibit F (at p. COC000761); City Councilmembers Declarations at ¶¶ 3 and 4 of

28  each, and Exhs. A thereto (at p. COC000761).)

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

The evidence establishes that the City, in denying ColfaxNet's variance request, did not unreasonably discriminate among providers of functionally equivalent services, and there is no evidence that the City's decision has prohibited the provision of personal wireless services. Accordingly, the City's denial of ColfaxNet's variance request was proper under 47 USCS §332(c)(7)(B)(i).

**D.      ColfaxNet Did Not Make an "Eligible Facilities Request"**

Aside from the timing of the City's decision on its variance application, which is addressed below, ColfaxNet hangs its hat on its argument that the City failed to approve "an Eligible Facilities Request" pursuant to 47 USC § 1455(a)(1).  (ColfaxNet's MPA at 21:8 – 25:6.) Specifically, 47 USC § 1455(a) provides that a State or local government may not deny, and must approve any "eligible facilities request" which the statute defines as a request for the **modification of an existing wireless tower or base station** that "does **not substantially change the physical dimensions** of such tower or base station", and involves merely the collocation of new equipment, the removal of transmission equipment, or the replacement of transmission equipment.  (Emphasis added.)  Neither ColfaxNet's proposed new tower, nor its application for a variance to construct it closer to the property boundary lines than is otherwise permitted under local law qualify as an "eligible facilities request" under 47 USC § 1455(a).

ColfaxNet's argument that the new tower the company hopes to build is a mere "modification" of an existing facility is somewhat perplexing in that it is difficult to tell whether ColfaxNet contends that the existing tree constitutes a "tower or a "base station" as the company uses those terms almost interchangeably.  ColfaxNet also uses the non-existent term "tree tower" from time to time, but that is a term that ColfaxNet has created from whole cloth to try to bolster its position in this case.  Either way, the applicable statutory law makes a clear distinction in defining these terms.

A tower is a structure "built" to support antennas and facilities for wireless communications services.  (*See* 47 CFR §1.6100(b)(9).  A "structure" by definition means a pole, tower, base station or other building, which means something that is built by humans and does  not occur in nature.  (See 47 CFR §1.6002).Trees are not "built".  Rather, they grow which means that

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

trees cannot be towers, and certainly cannot be "replaced" except with another tree.

Similarly, a "base station" is expressly defined so that it "does not encompass a tower" or "any equipment associated with a tower." (47 CFR §1.6100(b)(1).) ColfaxNet's intention is to transfer equipment from a tree into a *tower*. Therefore, it is equipment that is associated with a tower, and their variance application does not qualify as an "eligible facilities request" under 47 USC § 1455(a). To the extent that ColfaxNet argues that its existing antennas and the apparatus that support those antennas constitute a "base station", then the base station at issue would include only that equipment in and of itself, and no structure, and ColfaxNet's application still does not qualify as an "eligible facilities request". It is an application to build a brand new structure (a tower) in which to hang this equipment where no such structure has existed before, and not an application to modify an existing structure. The construction of a new tower in place of the tree would create a "substantial change" because not only would the height of the tower would be greater than the actual trunk of the tree, but also because the base of the tower would be wider than the tree trunk; at a minimum, these are triable issues of fact. Moreover, the construction of the tower would require a sizeable amount of excavation and pouring of cement piers or footers to support the tower, all of which would amount to causing a substantial change of the nature size and dimensions of the existing facilities.

Clearly, 47 USC § 1455(a) is intended to come into play when an applicant is proposing to build a like kind structure in terms of its nature, purpose and dimensions, to replace a substantially similar existing structure. That is not the case here, where ColfaxNet intends to replace a tree with a newly constructed, sixty to eighty foot steel tower. The City's decision to deny ColfaxNet's variance application is, therefore, not subject to being reviewed under 47 USC § 1455(a).

### E. The City Did Not Violate the "Shot Clock Rule" Under 47 USC § 332

The TCA, at 47 USC § 332 (c)(7)(B)(ii), requires that a state or local government or instrumentality thereof act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period of time* after the request is *duly filed* …. taking into account the nature and scope of such request, and the Act does not define "a reasonable period of time". (*Ill. RSA No. 3 v. County of Peoria*, 963 F.Supp. 732, 745-46 (C.D.Ill., 1997);

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

1   *distinguished on other grounds by Helcher v. Dearborn County*, 595 F.3d 710, 718 (7th Cir. 210).)

2   In *Ill. RSA*, *supra*, the County took six months to render a final decision, rather than the usual

3   three months it took to decide similar applications, however the Court did not find taking six

4   months to be per se unreasonable. (595 F.3d at 718, *supra*.) The court also found nothing in the

5   record to suggest that the County simply ignored or refused to process the application. (*Id.* at

6   746.) The record further reflected that the applicant did not object to several continuances and

7   generally took a permissive approach to scheduling. (*Ibid.*) The Court therefore found that the

8   County complied with 47 USC § 332 (c)(7)(B)(ii).

9       The 60-day review period that ColfaxNet gives short shrift to in its brief (Docket No. 22-1

10  [ColfaxNet's MPA] at 1:20 – 1:22) does not apply because it assumes that the application is for

11  modification of a facility that is covered, or an "eligible facilities request". (47 CFR 1.6100(c)(2).)

12  As discussed in the previous section, ColfaxNet's application wasn't truly for a modification of an

13  existing facility but rather was for the construction of a brand new tower that would be larger in

14  size than the tree. The 60-day review period can also be tolled by mutual agreement (*see* 47 CFR

15  1.6100(c)(3)), which is precisely what occurred here since ColfaxNet asked for a number of

16  postponements of the hearing on its application.

17      The Federal Communications Commission ("FCC") has opined that it is appropriate to

18  allow for adjustments to the presumptive deadlines to ensure that the timeframes accommodate

19  contingencies that may arise in individual cases, including where the applicant and the State or

20  local authority agree to extend the time, where the application has already been pending for longer

21  than the presumptive timeframe, and where the application review process has been delayed by the

22  applicant's failure to submit a complete application or to file necessary additional information in a

23  timely manner. (*See* Appendix of Non-Statutory and Non-Caselaw Authority ("Appendix"), Tab

24  1: *"In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*

25  *to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances*

26  *that Classify All Wireless Siting Proposals as Requiring a Variance"*, 24 FCC Rcd. 13994, 14010

27  (Nov. 18, 2009).) The FCC has specifically clarified that "a reasonable period of time" may be

28  extended beyond 90 or 150 days by mutual consent of the personal wireless service provider and

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

20

1    the State or local government, and that in such instances the commencement of the 30 day period

2    for filing suit will be tolled.  (Appendix, Tab 1: 24 FCC Rcd. 13994 at 14013.)  In the event that

3    an application is incomplete when filed, the 90-150 day timeframe does not include the time that

4    applicants take to respond to State and local governments' requests for additional information, if

5    the State or local government informs the applicant of its incomplete application within 30 days.

6    (*Id.* at 14014, ¶ 52 and 53.

7         Notably, although many courts have issued injunctions granting applications upon finding

8    a violation of 47 USC § 332 (c)(7)(B), granting an application is not "presumptively appropriate"

9    when the apparent failure to act occurs.  (Appendix, Tab 1: 24 FCC Rcd. at 14009, ¶ 39; *New Par*

10   *v. City of Saginaw*, 301 F.3d 390, 399-400 (6th Cir. 2002); *Nat'l Tower, LLC v. Plainville Zoning*

11   *Bd. of Appeals*, 297 F.3d 14, 24-25 (1st Cir. 2002); *Preferred Sites, LLC v. Troup County*, 296

12   F.3d 1210, 1222 (11th Cir. 2002).)  The FCC has noted that the cases where the application was

13   granted, the courts did so only after examining all the facts in that particular case.  (*Ibid*.)

14        The purpose of the FCC Short Clock Ruling was to bring clarity and to streamline the issue

15   as to when an applicant should file suit for the lack of resolution of its siting application.

16   (Appendix, Tab 1: 24 FCC Rcd. at 14011, ¶ 44.)  This is why courts are given discretion to

17   consider the State and local authorities' circumstances in individual cases in their assessment about

18   whether there had been a failure to act within a reasonable period of time.

19        Moreover, ColfaxNet is, or should be, equitably estopped from arguing that the City

20   violated the "Shot Clock Rule" because ColfaxNet itself asked for a number of postponements.

21   Equitable estoppel is a doctrine adjusting the relative rights of parties based upon consideration of

22   justice and good conscience.  (*Smale & Robinson, Inc. v. United States*, 123 F.Supp. 457, 463

23   (S.D.Cal.1954); *Peoples National Bank v. Manos Brothers, Inc*., 226 S.C. 257, 84 S.E.2d 857,

24   870, 45 A.L.R.2d 1070 (1954).)

25        Equitable estoppel has the effect of absolutely precluding a party, both at law and equity

26   'from asserting rights which might perhaps have otherwise existed, either of property, of contract,

27   or of remedy as against another person, who has in good faith relied upon such conduct, and has

28   been led thereby to change his position for the worse, and who on his part acquires some

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

corresponding right, either of property, of contract, or of remedy. (*U.S. v. Georgia-Pacific Co.*, 421 F.2d 92, 96-97 (D. N.H. 1970); *Bankers Trust Co. v. Pacific Employers Insurance Co*., 282 F.2d 106, 112 (9th Cir. 1960).) Equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party. (*Lebold v. Inland Steel Co.*, 125 F.2d 369, 375 (7th Cir. 1941).

In this case, the hearing on ColfaxNet's variance application was postponed several times, most of which were at ColfaxNet's own request, in order to provide its owner, Corey Juchau, additional time to gather and present relevant information that he did not yet have, and to explore potential alternatives to the proposed tower with the owner of the adjacent property, Thomas Swick. (FACT Nos. 25 through 37 and supporting evidence.) Accordingly, ColfaxNet should be equitably estopped from arguing that ColfaxNet violated the "Shot Clock Rule".

**F.      The City Based Its Denial on Substantial Evidence**

As noted in Section C above, the City took into account, and based its decision to deny ColfaxNet's variance application on a broad assortment of evidence that was presented at both the April 24, 2019 and September 25, 2019 hearings. That evidence is described in detail in Exhibits F through I to the Declaration of Amy Feagans and Exhibits B, D, and E to the Declaration of Wes Heathcock, which are all part of the administrative record for ColfaxNet's application. (FACT Nos. 38 through 45 and supporting evidence.)

Among other things, the City Council duly considered the oral arguments of at least eight proponents and three opponents and an attorney for one of the opponents of ColfaxNet's application (FACT No. 39 and supporting evidence); oral presentations by Corey Juchau himself and his attorney, R. Monti Reynolds (FACT No. 40 and supporting evidence); additional written information that Mr. Juchau had gathered since the April 24, 2019 hearing at the September 25, 2019 hearing (FACT No. 41 and supporting evidence); as detailed in the Staff Report that Amy Feagans and Wes Heathcock prepared following the September 25, 2019 hearing and Attachments 1 through 9 thereto. (FACT No. 43; Feagans Decl., ¶ 18 and Exh. I; Heathcock Decl., ¶ 10 and Exh. E [see pages COC000592 through COC000617of Exhibits I and E].) In addition, the City Council also considered an email dated September 24, 2019 from Dwayne Armstrong, a letter

dated September 24, 2019 from ColfaxNet's attorney R. Monti Reynolds, a September 24, 2019 letter from Ken and Cheri Wall, as well as five color photographs of the project site that were submitted to the Council at the hearing. (FACT No. 44 and supporting evidence.)

Under TCA, at 47 USC § 332, "substantial evidence" simply means such relevant evidence as *a reasonable mind* might accept as adequate to support any conclusion. (*SNET Cellular, Inc. v. Angell*, 99 F.Supp.2d at 195, *supra*; *see also MetroPCS, Inc. v. City & Cnty. of S.F.*, 400 F.3d 715, 725 (9th Cir., 2005); *Voice Stream PCS I, LLC v. City of Hillsboro*, 301 F.Supp. 2d 1251, 1256 (D. Oregan, 2004).) The critical inquiry is whether based on the record presented including that presented by the applicant, and evidence to the contrary, whether the governing board's decision was a reasonable one. (*Ibid*.) The substantial evidence inquiry requires the court to determine whether the zoning decision at issue is supported by substantial evidence in the context of applicable state and local law. (*Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1053 (9th Cir., 2014).

The court may not overturn a local body's decision on 'substantial evidence' grounds if that decision is authorized by applicable local regulations and is supported by a reasonable amount of evidence (i.e., more than a 'scintilla' but not necessarily a preponderance). (*Ibid citing MetroPCS, Inc. v. City &Cnty. of S.F.*, 400 F.3d at 725, *supra*.) The governing standard therefore is "highly deferential" to the local government's decision, but does not amount to a mere rubber stamp. (*Voice Stream*, 301 F.Supp.2d, *supra*, at 1256.) The court must examine the entire record, including evidence contradictory to the local government's decision, in determining whether substantial evidence supports the decision. (*Ibid, citing Southwestern Bell Mobile Sys. v. Todd*, 244 F.3d 51, 58 (1st Cir., 2001).)

The party seeking to overturn the local government's decision carries the burden of showing the decision was not supported by substantial evidence. (*Voice Stream*, 301 F.Supp.2d at 1256; citing *Voicestream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 830 (7th Cir., 2003). In *Voice Stream*, 301 F.Supp.2d the board based its denial on the basis of objection letters from residents of the neighborhood who were concerned about the tower affecting the natural character of their neighborhood, and the fact that the tower would be surrounded by existing

Wendel Rosen LLP
1111 Broadway, 24th Floor
Oakland, California 94607-4036

residences. Id at 1258. According to the court, the city properly relied on the evidence showing the tower would be incompatible with the character of the particular neighborhood. Ibid. The city also gave consideration to the proposed tower's distance from surrounding homes. Ibid. The court found the city's assessment to be reasonable, and further held that the city was within its authority to weigh the benefit of merely improving the existing coverage against the negative aesthetic impact the tower would cause. (*Voice Stream PCS I, LLC v. City of Hillsboro*, 301 F.Supp.2d, *supra*, at 1259.) The court therefore found the city's assessment to be supported by substantial evidence. (*Ibid*.)

In this case, the evidence well establishes that the City based its decision on ColfaxNet's variance application on substantial evidence.

### G. The City Satisfied the "In Writing" Requirement

The Ninth Circuit has taken a middle ground approach to what would constitute a sufficient "in writing" denial by the local government. (*In MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d715, 722 (9th Cir., 2005).) There, the Court held that the "in writing" requirement under 47 USCS §332(c)(7)(B)(iii) is satisfied *so long as courts can ascertain the basis for the local body's decision* at issue, and can then assess the written record as evidentiary support. Therefore the written denial only needs to be elaborate enough to permit this assessment. (*Ibid.*) A review of MetroPCS further does not lay down a stringent rule as to what would satisfy the "in writing" requirement. Notably, the statute itself does not mention that the written decision needs to be contemporaneously provided with a vote during the public hearing.

ColfaxNet relies on *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293 (2015), to argue that the City failed to issue a written denial essentially contemporaneously with the vote at the end of the public hearing. Notably, in *T-Mobile*, the court held that detailed minutes of the meeting which had a record of the board's opinions, and the evidence considered was sufficient to constitute a written denial for the purpose of 47 USCS §332(c)(7)(B)(iii). (*T-Mobile*, 574 U.S., *supra,* at 294.)

/ / /

/ / /

/ / /

### H. If For Any Reason The Court is Inclined to Find That ColfaxNet Has Met Its Burden on This Motion, The Court Should Postpone Deciding This Motion Until ColfaxNet Responds to the City's Outstanding Discovery

On February 8, 2020, the parties filed a Joint Status Report with the Court pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and this Court's October 25, 2019 Order Re: Status (Pretrial Scheduling) Conference (**Docket No. 3**).  In their Joint Status Report, the parties agreed to a discovery plain in which each of them could propound up to twenty (20) Interrogatories, Request for Admissions and Requests for Production of Documents.  (**Docket No. 7 at 3:10-3:112**.)  The Court accepted the parties' discovery plan set forth in their Joint Status Report, cancelled their previously scheduled status conference and issued an updated Status (Pretrial Scheduling) Order on February 27, 2020 in which the Court ordered that all non-expert discovery that was outlined in the parties' Joint Status Report be completed by September 21, 2020.  (**Docket No. 9 at 2:22-2:24**.)

On April 16, 2020 the City propounded its first sets of Interrogatories, Requests for Production of Documents and Requests for Admission to Plaintiff, discovery requests that were within the number limits that the Parties had previously agreed to in their Joint Status Report and were basic in nature:  the discovery sought the facts and documents upon which ColfaxNet bases its allegations in its complaint, and the identity of the witnesses who are known to ColfaxNet to have knowledge of those facts.  (**Docket No. 16 at 2:10 – 2:14, and Exhs. A through C thereto**.)  The City also served notices of the depositions of ColfaxNet's two principals, Corey and Lynele.  (**Docket No. 16 at 2:17 – 2:21, and Exhs. D and E thereto**.)  After asking the City for two extensions of its deadline to respond to the City's discovery which the City granted, ColfaxNet eventually responded on June 2, 2020 with nothing other than blanket boilerplate objections to each and every discovery request.  (**Docket No. 16 at 2:22 – 3:4, and Exhs. F and G thereto**.) ColfaxNet did not serve a single substantive response to any one of the City's discovery requests. Moreover, Plaintiff also objected to the City's deposition notices at the eleventh hour, over a month after the deposition notices has been served, and refused to produce Corey and Lynele for their scheduled depositions.  (**Docket No. 16 at 3:5 – 4:1, and Exhs. H and I thereto**.)

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

The City duly met and conferred with Plaintiff regarding its refusal to substantively respond to the City's written discovery, refusal to produce any documents and refusal to appear for duly noticed depositions, but Plaintiff refused to budge from its position, forcing the City to file a motion to compel ColfaxNet to comply with its discovery obligations.

ColfaxNet contends in this case that the City did not have the right to enforce its setback requirements for ColfaxNet's proposed new steel tower pursuant to U.S.C. §332(c)(7), at least in part because the effect of the City's decision was deprive or deny the furnishing of such services. In the face of ColfaxNet's allegations and facts that are detailed in this motion, the City has the right to conduct the basic discovery as to the facts on which this claim, as well as ColfaxNet's companion claims are predicated, including but not limited to (a) the facts upon which ColfaxNet bases its arguments that the City's denial of its variance application resulted in a prohibition of the provision of wireless services" (**Docket 22-1 [MPA] at 1:25**).  ColfaxNet has failed to provide any such evidence to date.  ColfaxNet has also failed and refused to provide to provide any evidence to support its position that it has no viable alternatives to constructing the steel tower that it wants, which is also the subject of the City's discovery requests.

Judge Delaney recently issued an order on August 19, 2020 (**Docket No. 27**), granting in its entirety the City's motion to compel ColfaxNet's substantive responses to written discovery, and to compel ColfaxNet to produce its principals Corey and Lynele Juchau for their depositions, including the City's request for attorneys' fees.  (**Docket No. 27 at 9:22 – 10:16**.)  In her order, Judge Delaney found that the objections upon which ColfaxNet based its refusal to respond to discovery were meritless (**Docket No. 27 at 3:11 – 6:14**), and that ColfaxNet took unfair advantage of the City by making "multiple requests for extensions" of its deadline to respond to the City's discovery, which the City granted in good faith, only to serve nothing but meritless objections to each and every discovery request and deposition notice in the end.  (**Docket No. 27 at 8:11 – 9:7**.)  All of this occurred notwithstanding the fact that ColfaxNet earlier agreed to participate in the discovery that the City propounded, and which became the subject of its motion to compel.  (**Docket No. 7**).

The City has the right to conduct basic discovery before having to oppose this motion, and

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1  summary judgment motions are generally improper where the non-moving party has not had the

2  opportunity to discover information that is essential to its opposition.  (*Burnside-Ott Aviation*

3  *Training Center, Inc. v. U.S., C.A.* 985 F.2d 1574, 1582 (Fed. Cir. 1993); *Anderson v. Liberty*

4  *Lobby, Inc.* 477 U.S. 242, 250 (1986).)  This prevents the opposing party from being "railroaded"

5  by a premature motion for summary judgment.  (*Celotex Corp. v. Catrett*, 477 US 317, *supra;* 106

6  *Rivera-Torres v. Rey-Hernández,* 502 F3d 7, 10 (1st Cir. 2007) [rule provides useful safety valve

7  "against judges swinging the summary judgment axe too hastily"].)

8        Accordingly, if for any reason the Court deems otherwise, then pursuant to Fed. R. Civ. P.

9  56(d), ColfaxNet respectfully requests that the Court postpone its decision on this motion until

10  ColfaxNet has responded to the City's long outstanding written discovery and produces its two

11  principals, Corey and Lynelle Juchau, for their depositions.

## IV.  CONCLUSION

13        ColfaxNet's Motion for Summary Judgment is frivolous, as is this case.  ColfaxNet would

14  like to construct a brand new steel tower that it advised the City would be between sixty and

15  eighty feet tall within ten feet of the nearest property boundary lines, in violation of the City's

16  setback requirements.  ColfaxNet mischaracterizes the new tower that it wants to build as a

17  "modification" of an existing "tree tower", a term that ColfaxNet invented to describe what it

18  really uses at this time to mount its wireless communications antennas, a _tree_.  The tower that

19  ColfaxNet proposes is neither the same thing, nor the same size as the tree that holds its

20  telecommunications equipment.  The tree is a naturally existing organism while the tower it wants

21  to construct would be a human built structure made from non-naturally occurring materials:

22  namely steel and other metals, and perhaps some ceramic, synthetic rubber and other human made

23  materials.  For that reason, ColfaxNet's application does not qualify as an "eligible facilities

24  request" under the TCA, and the City had every right to deny ColfaxNet's variance application on

25  the numerous articulated grounds that it did.

26        As demonstrated in this opposition, the City's denial of ColfaxNet's variance application

27  was in writing and was timely in light of the numerous delays and requests for extensions and

28  continuances that ColfaxNet requested, as well as in light of the emergency power shutdowns that

Wendel Rosen LLP
1111 Broadway, 24ᵗʰ Floor
Oakland, California 94607-4036

1    occurred due to the wildfires that were occurring in the Sierra Foothills in October of 2019.

2    Finally, ColfaxNet should be equitably estopped from arguing that the City's decision on its

3    application was untimely under the "Shot Clock Rule" because of ColfaxNet's own delays and its

4    repeated requests that the City postpone the proceedings to afford ColfaxNet more time to conduct

5    its due diligence.

6        Finally, if for any reason the Court is inclined to find that ColfaxNet has carried its burden

7    on this motion, then the City respectfully requests that the Court postpone making its decision on

8    this motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure until ColfaxNet

9    complies with the Court's recent order granting the City's motion to compel ColfaxNet's responses

10    (**Docket No. 27**). The City makes this request on the grounds that ColfaxNet engaged in a

11    deliberate and sordid plan to sandbag the City by refusing to respond to <u>any</u> of the City's duly

12    served discovery or appear for depositions, necessitating that the City file an arduous motion to

13    compel it responses causing unwarranted delays and needlessly causing the City to incur expense.

14

15    DATED: August 25, 2020          WENDEL ROSEN LLP

16

17                       By: _____

18                             Mark D. Epstein
                             Attorneys for Defendant City of Colfax

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND        28
AUTHORITIES IN SUPPORT OF OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT