UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| COLFAXNET LLC, | No. 2:19-cv-02167 WBS CKD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |
| CITY OF COLFAX, | |
| Defendant. | |

----oo0oo----

Plaintiff ColfaxNet, LLC ("Plaintiff" or "ColfaxNet"), brought this action against Defendant City of Colfax ("Defendant" or "City") alleging violations of the Federal Telecommunications Act ("TCA"), 47 U.S.C. § 332(c)(7)(B) and 47 U.S.C. § 1455, and its implementing regulations codified at 47 C.F.R. § 1600. Plaintiff alleges that defendant: (1) did not act on plaintiff's request to modify an existing wireless communication facility within a reasonable period of time, (2) failed to draft a written denial of the plaintiff's request, (3) failed to support its denial with substantial evidence in the record, (4) improperly

1

considered radio frequency emissions in issuing the denial of plaintiff's request, (5) unlawfully prohibited plaintiff from providing service, and (6) unlawfully denied plaintiff's eligible facilities request.  (See generally Compl. (Docket No. 1).)

Plaintiff seeks declaratory and injunctive relief in the form of a court order stating that the defendant violated the TCA and mandating that the defendant issue the requisite permits for plaintiff to proceed with the placement, construction, and/or modification of the ColfaxNet wireless service facilities proposed in the applications.  (See generally Compl.)  The plaintiff's Motion for Summary Judgment is now before the court.[1]  ("Mot. for Summ. J.") (Docket No. 22.)

I.   Factual and Procedural Background

ColfaxNet LLC is a small family-owned company that provides communication services, including personal wireless service and wireless broadband internet service, in Colfax and its surrounding region, consistent with licenses granted by the Federal Communications Commission ("FCC").  (Administrative Record ("A.R.") COC000231-32 (Docket No. 22-5, Ex. A).)  To provide wireless services, ColfaxNet must place, construct, modify, maintain, and operate its network of towers, base stations, antennas, and associated electronic equipment.  (A.R. COC000231-42.)  ColfaxNet attaches wireless equipment to trees to enable wireless communications between user equipment and the

---

[1]   Plaintiff has not moved for summary judgment on two counts in its complaint (Count 3: denial not based on substantial evidence and Count 5: effective prohibition of wireless service.) (See Reply Br. of Pl. in Supp. of Mot. for Summ. J. at 2) (Docket No. 30).)

2

ColfaxNet communications network.  (Id.)

ColfaxNet maintains wireless service facilities on Colfax Hill/Beacon Hill, including one on a small portion of an 8.5 acre parcel of land at Sierra Sky Court/ Drive in the City of Colfax.  (A.R. COC000227-30.)  Colfax Hill/Beacon Hill serves as the hub of ColfaxNet's hub-and-spoke wireless system, and ColfaxNet has been transmitting from this location for over 15 years.  (A.R. COC000038-44.)  A primary tree tower used by ColfaxNet on Colfax Hill/ Beacon Hill is dead and at risk of falling.  (A.R. CFN0010.)  ColfaxNet determined that a single metal tower should replace that tree tower.  (A.R. CFN0011.)

ColfaxNet initiated preliminary discussions regarding replacement of the tower with the City's Planning Director, Amy Feagans, in February 2017.  (A.R. CFN0001-2.)  On or around February 20, 2017, Ms. Feagans informed ColfaxNet that a 60-foot metal tower could be approved administratively through an Administrative Permit.  (Id.)  On February 21, 2017, Ms. Feagans told ColfaxNet that a Conditional Use Permit would actually be required and ColfaxNet submitted some materials.  (Id.)  On August 24, 2017, Ms. Feagans emailed ColfaxNet and indicated that ColfaxNet's request would be considered a Conditional Use Permit application and would "probably take at least 5-6 weeks to process given the public hearing requirements and Council meeting dates."  (A.R. CFN0093-105.)

On November 15, 2018, ColfaxNet filed its Request with the City of Colfax for authorization to place, construct, or modify wireless service facilities/structures, seeking to replace the dead tree on which ColfaxNet wireless equipment was located

1    with a metal tower.  (A.R. COC000231-42.)  Ms. Feagans had
2    several discussions with the principal of ColfaxNet, Corey
3    Juchau, throughout December 2018 and January 2019 regarding the
4    problems that the City's setback requirement in Municipal Code
5    Section 17.132.030 A-9 created for his proposed tower.  (Decl. of
6    Amy Feagans in Opp'n. to Pl.'s Mot. for Summ J. at ¶ 8 ("Feagans
7    Decl.") (Docket No. 28-7).)  She advised him that that he would
8    either need to apply for a variance, which would require a public
9    hearing, or he would need to construct the tower at least 120
10   feet away from the property's boundary lines.  (Id.)

11           ColfaxNet alleges that on or around January 15, 2019,
12   Ms. Feagans informed them that the City had unilaterally
13   determined that the request should be classified as a more
14   significant request for a major variance rather than a
15   conditional use permit.  (Compl. at ¶ 23.)  Ms. Feagans states
16   Mr. Juchau responded by informing her that he wanted extra time
17   before his application was set for a hearing to explore whether
18   ColfaxNet had other potential options to its proposed sixty-foot
19   tower and wanted to discuss the matter with the owners of various
20   parcels to dissuade them from opposing his variance request.
21   (Feagans Decl. at ¶ 9.)  Ms. Feagans also claims that in March
22   2019 Mr. Juchau mentioned that the proposed tower would actually
23   be 80 feet tall and that ColfaxNet vacillated as to the true
24   height of the proposed tower prior to the City Council hearing.
25   (Id. at ¶¶ 11-12.)

26           On April 24, 2019, the City of Colfax held a City
27   Council Meeting and Hearing during which ColfaxNet's request was
28   discussed.  (A.R. COC000001-3.)  The City's Mayor recused himself

and was not present for any portion of the hearing. (Feagans Decl. at ¶ 14.) As a result, Councilmember Marnie Mendoza presided over that City Council meeting relative to the ColfaxNet Request as Mayor Pro Tem. (A.R. COC000001-3.)

During the meeting on April 24, 2019, many constituents testified both for and against the construction of the ColfaxNet tower. (Id.; A.R. CFN0056.) Several constituents and Mayor Pro Tem Mendoza discussed the health hazards of radio frequency emissions relative to the placement, construction, and/or modification of the ColfaxNet wireless service facility. (Id.) Mayor Pro Tem Mendoza distributed materials concerning the purported health hazards of radio frequency emissions relative to the placement of the wireless service facility. (A.R. CFN0052-91.)

At that same meeting, the City Council voted for a continuance for consideration of the Request. (A.R. COC000003.) The minutes of the City Council hearing state that "Mayor Pro Tem Mendoza, after hearing from many constituents, spent some time gathering information regarding communication towers and safety concerns" and that she felt that the City Council "needs more time and information before making a decision that will balance health, fire safety, and the services provided." (Id.)

The City requested further information from ColfaxNet on April 30, 2019. (A.R. COC000011.) ColfaxNet supplied the requested information on May 4, 2019. (A.R. COC000033-37.) Neighboring landowners and City officials asked ColfaxNet to consider and discuss alternative tower options, and ColfaxNet consented to postpone the matter to further these discussions

1  between the City Council meetings of May 22, 2019 and August 14,
2  2019. (Mot. for Summ. J. at 10.)  The City requested additional
3  information from ColfaxNet on June 8, 2019 and September 10,
4  2019, which was provided by ColfaxNet on June 19, 2019 and
5  September 13, 2019, respectively.  (A.R. COC000084-86, CFN0035-
6  39.)
7          At the City Council Meeting on September 25, 2019,
8  Mayor Pro Tem Mendoza and all the other Councilmembers verbally
9  voted to deny the ColfaxNet request for authorization to place,
10 construct or modify the ColfaxNet wireless service facility.
11 (A.R. COC000731-41.)  Following that meeting, City Attorney
12 Alfred Cabral, Ms. Feagans, and City Manager Wes Heathcock began
13 drafting the written Findings and Order adopting the City
14 Council's decision to deny ColfaxNet's setback variance
15 application.  (Feagans Decl. at ¶ 20.)  They placed the matter on
16 the agenda to be formally adopted by the City Council at its
17 scheduled regular meeting on October 23, 2019.  (Id.)  Before
18 that meeting could occur, there were a number of wildfires in the
19 area which resulted in Pacific Gas & Electric ("PG & E") public
20 safety shutdowns, so the City Council had to postpone the
21 meetings scheduled during this period because City Hall does not
22 have backup electricity generation capabilities.  (Id.)
23 ColfaxNet filed this suit against the City on October 25, 2019.
24 (See generally Compl.) (Docket No. 1.)
25         The first regularly scheduled City Council meeting
26 following the PG & E public safety shutdowns did not take place
27 until November 13, 2019.  (Id. at ¶ 22.)  On that date, the City
28 Council approved the written Findings and Order prepared by Ms.

6

Feagans, Mr. Cabral, and Mr. Heathcock, and formally denied ColfaxNet's variance request by passing Resolution No. 50-2019. (Id.)  The City accordingly claims that it issued its written denial of ColfaxNet's application on November 13, 2019.  (Supp. Br. in Supp. of Opp'n. to Mot. for Summ. J. ("Supp. Opp'n.") at 11 (Docket No. 42).)  The City mailed the two-page written Findings and Order to ColfaxNet on November 19, 2019.  (A.R. COC000004-5.)

II.  Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial.  Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Any inferences drawn from

the underlying facts must, however, be viewed in the light most favorable to the party opposing the motion.  See id.

     A.    The Telecommunications Act of 1996

ColfaxNet alleges that the City violated multiple provisions of the TCA.  The TCA is "an omnibus overhaul of the federal regulation of communications companies." Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 637 (2d Cir. 1999).  It aims "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Telecommunications Act of 1996, Pub. L. No. 104-104, Preamble., 110 Stat. 56.  To advance these twin goals, Congress enacted Section 332(c) of the TCA, which provides for FCC regulation of wireless telephone services.  See T-Mobile NE LLC v. Town of Ramapo, 701 F. Supp. 2d 446, 456 (S.D.N.Y. Sept. 26, 2009).  While the TCA generally preserves the traditional authority of state and local governments to regulate the location, construction, and modification of wireless communications facilities like cell phone towers, it imposes specific limitations on that authority. See T-Mobile South, LLC v. City of Roswell, Ga., 574 U.S. 293, 300 (2015).  It is these limitations that are at issue here.

     1.    Written Denial of Application

The TCA provides that "[a]ny decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).

1  "Any person adversely affected by any final action or failure to
2  act by a local government may, within 30 days after such action
3  or failure to act, commence an action in any court of competent
4  jurisdiction which shall hear and decide the action on an
5  expedited basis."  47 U.S.C. § 332(c)(7)(B)(v).  The relevant
6  final action is the issuance of the written notice of denial, not
7  the subsequent issuance of the reasons explaining the denial.
8  See City of Roswell, 574 U.S. at 305 n.4.  Because an entity may
9  not be able to make a considered decision whether to seek
10 judicial review without knowing the reasons for the denial of its
11 application, and because a court cannot review the denial without
12 knowing the locality's reasons, the locality must provide or make
13 available its written reasons at essentially the same time as it
14 communicates its denial.  See id. at 304.

15      The parties agree that the City Council of Colfax
16 orally voted to deny the ColfaxNet request on September 25, 2019
17 and did not provide a written denial or statement of reasons at
18 that time.  ColfaxNet argues that the City's written denial,
19 filed after litigation had already commenced, should either be
20 regarded as a complete nullity, or as unreasonably delayed under
21 federal law.[2]  (Mot. for Summ. J. at 15.)  The City contends that

---

[2]  ColfaxNet has not cited to any case law to show that a written denial issued after the initiation of litigation cannot be considered, nor is the court aware of any such requirement. The cases cited by ColfaxNet in support of this proposition actually refer to whether the denial of the request was based on substantial evidence.  (See Mot. for Summ. J. at 14-17.) Accordingly, the court will consider the City's written denial, but will also consider ColfaxNet's argument that the denial was untimely.

it has satisfied the requirements of § 332(c)(7)(B)(iii) because it approved the written denial of ColfaxNet's application on November 13, 2019 and sent its Findings and Order to ColfaxNet six days later on November 19, 2019. (Supp. Opp'n. at 10; A.R. COC000004-5.) The City argues that this its written denial was therefore "essentially contemporaneous" with its communication of the reasons for its denial under City of Roswell. (Supp. Opp'n. at 10.)[3]

This case is readily distinguishable from City of Roswell. In City of Roswell, a city council orally voted to deny the plaintiff's application, sent a formal written denial two days afterwards, and then approved and published the detailed written minutes of the City Council meeting 26 days later, leaving the plaintiff only four days to seek judicial review. See City of Roswell, 574 U.S. at 298. The Supreme Court held that issuing detailed facts and findings 26 days after the written denial was not essentially contemporaneous with the denial itself and thus did not satisfy the statutory requirement. See id. at 308. The Supreme Court was particularly concerned about localities attempting to stymie or burden the judicial review contemplated by the statute. See id. at 304.

---

[3] The City also argues that the Supreme Court in City of Roswell held that detailed minutes of a board meeting which contained a record of the board's opinion was sufficient to constitute a written denial for the purpose of 47 U.S.C. § 332(c)(7)(B)(iii). See City of Roswell, 574 U.S. at 303. (Opp'n. to Mot. for Summ. J. at 24) (Docket No. 28.) Although this is certainly true, defendant has never contended that it has such detailed minutes or pointed to them in the record. Thus, this argument is irrelevant here.

10

In a recent case, <u>GTE Mobilnet of California Ltd. Partnership v. City of Watsonville</u>, Case No. 16-cv-03987 NC, 2016 WL 9211684, at *1-2 (N. D. Cal. Nov. 1, 2016), the court held that the City of Watsonville failed to issue a timely written decision when it provided a written denial of plaintiff's application for a wireless communications facility one month after the oral vote denying the facility at the City Council meeting, and a day after the plaintiff had filed suit.  Here, the City of Colfax waited nearly two months after the City Council vote to issue its written denial and Findings and Order.  (<u>See</u> Compl. at 1; A.R. COC000004-5.)

However, the City contends that the delay in issuing its written decision and statement of reasons was due to the PG & E public safety shutdowns because of the wildfires in the region. (Feagans Decl. at ¶¶ 20-21.)  The City Council had to postpone the meetings scheduled during this period because of the public safety shutdowns and was not able to hold a regularly scheduled meeting until November 13, 2019.  (<u>Id.</u> at ¶ 22.)  At that first regularly scheduled meeting following the public safety shutdowns, the City Council formally adopted its September 25, 2019 findings on ColfaxNet's application.  (<u>Id.</u>)  The City contends that it issued its written decision that same day. (Supp. Opp'n. at 11.)

Accordingly, after reviewing all the evidence presented in the record, the court finds that there is a genuine issue of material fact as to whether the City of Colfax's written decision in the Findings and Order document was untimely, and will deny ColfaxNet summary judgment on this claim.

### 2. Acting on Request within Reasonable Period of Time

A state or local government "shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality." 47 U.S.C. § 332(c)(7)(B)(ii). The FCC established that a presumptively reasonable period of time for such applications is 150 days in its "Shot Clock Ruling". See In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) To Ensure Timely Siting Review, 24 FCC Rcd. 13994 (Nov. 18, 2009) ("Shot Clock Ruling"). The Supreme Court has upheld the FCC's authority to interpret the "reasonable period of time" provision and the reasonableness of the 150 day deadline. See City of Arlington. v. Fed. Comm. Comm'n, 569 U.S. 290, 307 (2013).

However, the FCC clarified that "the State or local authority will have the opportunity, in any given case that comes before a court to rebut the presumption that the established timeframes are reasonable" based upon unique circumstances in individual cases. See Shot Clock Ruling, 244 FCC Rcd. at 14010–11, ¶¶ 42,44. The Shot Clock Ruling further warns that "rigid application of this cutoff to cases where the parties are working cooperatively toward a consensual resolution would be contrary to both the public interest and Congressional intent." See id. at 14013, ¶ 49.

In order to formally toll the 150 day period, the authority must "notif[y] the applicant in writing that the application is materially incomplete and specifically identif[y]

the missing documents or information that the applicant must submit to render the application complete and the specific rule or regulation creating this obligation." 47 C.F.R. § 1.6003(d)(2)(i).  The authority must notify the applicant on or before the thirtieth day after the application was submitted. See 47 C.F.R. § 1.6003(d)(2)(iii).  However, the Shot Clock Ruling also states that the 150 day deadline may be extended by mutual consent of the personal wireless service provider and the local government.  See Shot Clock Ruling, 244 FCC Rcd. at 14013, ¶ 49.

ColfaxNet argues that summary judgment should be granted on its "reasonable period of time" claim because it filed its application on November 15, 2018, (A.R. COC000231-42.), and did not receive a final judgment on its application until November 2019, well over 150 days after its application was filed.  (Mot. for Summ. J. at 19.)  It contends that the City should have acted by April 14, 2019 to comply with this 150 day deadline.  (See Supp. Reply Br. of Pl. ColfaxNet, LLC in Supp. of Mot. for Summ. J. at 9 "Supp. Reply") (Docket No. 44).) ColfaxNet also notes that there was no written tolling agreement between the parties and that the City never gave ColfaxNet written notice, issued within 30 days of November 15, 2018, that the application was materially incomplete and which detailed the specific documents required.  (Id.)

The City, on the other hand, argues that the delay in addressing ColfaxNet's application within the 150 day period was largely due to ColfaxNet.  (Opp'n. to Mot. for Summ. J. at 22.) Planning Director Amy Feagans was in frequent communication with

13

1  ColfaxNet's principal, Corey Juchau, throughout December 2018 and
2  January 2019.  (Feagans Decl. at ¶ 4.)  Ms. Feagans states that
3  in January 2019, Mr. Juchau informed her that he wanted extra
4  time before his application was set for a hearing to explore
5  whether ColfaxNet had other potential options to its proposed
6  sixty-foot tower and that he wanted to discuss the matter with
7  the owners of various parcels to dissuade them from opposing his
8  variance request.  (Id. at ¶ 9.)  The City agreed and did not
9  immediately place the application on the schedule for hearing.
10 (Id.)  On March 7, 2019, Ms. Feagans requested a better example
11 of the proposed tower in advance of the City Council hearing.
12 (Id. at ¶ 10.)  In response to Ms. Feagans email, Mr. Juchau
13 indicated that the proposed tower might actually be 80 feet tall
14 rather than 60 feet.  (Id. at ¶ 11.)  Ms. Feagans contends that
15 between March 12, 2019 and the date of the scheduled City Council
16 hearing on April 24, 2019, Mr. Juchau vacillated as to the height
17 of its proposed new tower and would not definitively state what
18 the height would be.[4]  (Id. at 12.)  In sum, the City argues that
19 the 150 day timeline was not mandatory due to the unique
20 circumstances of this case and the postponements requested by
21 ColfaxNet.  (Opp'n. to Mot. for Summ. J. at 22.)
22          After reviewing all the evidence in the record, the

---

[4]  ColfaxNet concedes that after the City continued the ColfaxNet request from the April 24, 2019 City Council meeting to the May 22, 2019 meeting, ColfaxNet generally consented to continuances from May 22, 2019 to August 14, 2019 to explore possible accommodations with objecting neighboring landowners and to evaluate alternative options.  (Mot. for Summ. J. at 19.)  ColfaxNet claims that this pressure to consider alternative arrangements was unreasonable and unlawful.  (Id.)

14

court concludes that there is a genuine issue of material fact as to whether the 150 day timeline was reasonable in light of the circumstances of this case.  Although there was no formal agreement to extend the 150 day deadline, there is evidence from which the trier of fact might reasonably draw the inference that the parties mutually consented to postpone the review of the application.  Accordingly, the court will deny ColfaxNet's motion for summary judgment on this claim.

### 3.   Eligible Facilities Request

The TCA states that a "local government may not deny, and shall approve, any eligible facilities request for a modification of an existing wireless tower or base station that does not substantially change the physical dimensions of such tower or base station."  47 U.S.C. § 1455(a)(1).  The term "eligible facilities" request means any request for modification of an existing wireless tower or base station that involves hosting new transmission equipment, removal of transmission equipment, or replacement of transmission equipment.  See 47 U.S.C. § 1455(a)(2).  A "modification" substantially changes the physical dimensions of an eligible support structure, and precludes an application from being deemed an eligible facilities request, if it "increases the height of the tower by more than 10%", 47 C.F.R. § 1.6100(b)(7)(i), or "entails any excavation or deployment outside the current site."  47 C.F.R. § 1.6100(B)(7)(iv).

The FCC has established a 60 day review period for applications of this kind.  See 47 C.F.R. § 1.6100(c)(2).  In the event that the reviewing state or local government fails to

15

1  approve or deny a request seeking approval within the timeframe
2  for review, the request shall be deemed granted.  See 47 C.F.R. §
3  1.6100(c)(4).

4       The City first contends that ColfaxNet's application
5  does not constitute an eligible facilities request because it is
6  an application to build a brand new structure where no structure
7  has existed before, not an application to modify an existing
8  structure.  (Opp'n. to Mot. for Summ. J. at 19.)  The City argues
9  that a tree does not constitute a "structure" which the FCC has
10 defined as "a pole, tower, base station, or other building,
11 whether or not it has an existing antenna facility, that is used
12 or to be used for the provision of personal wireless service."
13 47 C.F.R. § 1.6002(m).  ColfaxNet counters that the FCC license
14 issued to them indicates "Tree" as the Support Structure Type.
15 (A.R. CFN000185.)  ColfaxNet argues that the tree to which
16 ColfaxNet's equipment is attached is considered a "base station"
17 which is defined as "a structure . . . . at a fixed location that
18 enables Commission-licensed or authorized wireless communications
19 between user equipment and a communications network."  See 47
20 C.F.R. § 1.6100(b)(1).

21      ColfaxNet also cites to the City's Findings and Order
22 in support of its contention that the tree should be considered a
23 base station, which states that "the variance application, if
24 approved, would substantially change the physical dimensions of
25 the tower or base station in which the applicant's antennas are
26 presently located."  (A.R. CFN0049.)  It argues that because the
27 tree is at a fixed location, holds existing antenna facilities
28 used for the provision of personal wireless service, and enables

authorized wireless communications between user equipment and a communications network, it constitutes a base station as defined by 47 C.F.R. § 1.6100(b)(1).

The City also contends that ColfaxNet did not make an eligible facilities request because the modification of the tree base station would require excavation or deployment outside the current site. (Supp. Opp'n. at 7.) The City claims that the area of the property on which ColfaxNet intends to construct its tower is outside the current site on a level area above the dead tree. (Decl. of Mark Epstein in Opp'n. to Pl.'s Mot. for Summ J. at Ex. A, 57:18-61:11 ("Juchau Dep.") (Docket No. 42-2). The City states that because ColfaxNet's plan calls for mounting the tower on a concrete base, (Juchau Dep. at 73:23-74:13), it will require excavating a previously untouched portion of the property and pouring a concrete base to support the tower. (Supp. Opp'n. at 7.) ColfaxNet maintains that it would not be excavating beyond the current site because the tree's roots stretch out at least as wide as the base of the new structure. (See Supp. Reply at 12.)[5]

---

[5] The City also appears at times to argue that the proposed tower does not constitute an eligible facilities request because the modification will "increase the height of the structure by more than 10% or more than ten feet, whichever is greater." 47 C.F.R. § 1.6100(b)(7)(i). (See Opp'n. to Mot. for Summ. J. at 19.) The City does not raise this argument again in their supplemental opposition. However, in the Colfax City Council Hearing minutes provided by the defendant, it clearly states "the new tower would be no higher than the existing equipment, approximately 72 feet." (See A.R. COC000001.) Since the record indicates that the height of the new tower would be the same as the tree tower currently in place, the court does not find that the ColfaxNet request constitutes a substantial change in terms of height under 47 C.F.R. § 1.6100(b)(7)(i).

17

1    This court has no way of determining how far the tree's
2 roots extend relative to the area that would be excavated to
3 remove the tree and build the new tower, given the evidence in
4 the record.  Therefore, there is a genuine issue of material fact
5 as to whether there would be excavation or deployment outside the
6 current site constituting a substantial change to the structure
7 and thus whether ColfaxNet's application actually constitutes an
8 "eligible facilities request".  Accordingly, the court will deny
9 plaintiff's motion for summary judgment on this claim.

10    4.   Consideration of Radio Frequency Emissions
11    Under the TCA, a state or local government cannot base
12 a decision to regulate a wireless facility on the "environmental
13 effects" of that facility's radio frequency emissions if the
14 facility complies with FCC standards.  See 47 U.S.C. §
15 332(c)(7)(B)(iv).  Environmental effects within the meaning of
16 the provision include health concerns about the biological
17 effects of radio frequency radiation.  See Freeman v. Burlington
18 Broadcasters, Inc., 204 F.3d 311, 325 (2d. Cir. 2000); Cellular
19 Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 n.3 (2d Cir.
20 1999).

21    It is undisputed that ColfaxNet's proposed tower
22 complies with the relevant FCC regulations for radio frequency
23 emissions.  The declarations of the City Council members in
24 opposition to the Motion for Summary Judgment state that they did
25 not consider radio frequency emissions when making their
26 decision.  (Decl. of Sean Lomen in Opp'n to Pl.'s Mot. for Summ.
27 J. at ¶ 4 (Docket No. 28-2); Decl. of Kim Douglass in Opp'n to
28 Pl.'s Mot. for Summ. J. at ¶ 4 (Docket No. 28-3); Decl. of Marnie

Mendoza in Opp'n to Pl.'s Mot. for Summ. J. at ¶ 4 (Docket No. 28-4); Decl. of Trinity Burruss in in Opp'n to Pl.'s Mot. for Summ J. at ¶ 4("Burruss Decl.") (Docket No. 28-5).)  The Findings and Order adopted by the City Council in November 2019 also declares that "[t]he Council did not consider or factor into its findings or decision the environmental effects of radio frequency emissions.  (A.R. COC000004-5).  Yet, during the City Council meeting on April 24, 2019, Mayor Pro Tem Marnie Mendoza expressed concern about the potential health risks of radio frequency emissions, (see A.R. CFN0056), discussed the research she had performed as to these purported risks, (see id.), and actually distributed material about these risks.  (See A.R. CFN0057-91.) [6] The court therefore concludes that there is a genuine issue of material fact as to whether the City of Colfax based its decision at least in part on the environmental effects of the proposed tower's radio frequency emissions.  Accordingly, the court will deny plaintiff's motion for summary judgment on this claim.

     IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Docket No. 22) be, and the same hereby is, DENIED.

Dated:  November 5, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6] Although ColfaxNet also alleges that Councilmember Burruss expressed concerns about radio frequency emissions, it has not pointed to any evidence in the record to support this allegation.  (Mot. for Summ. J. at 27.)